OPINION OF THE COURT
Gabrielli, J.
We are called upon to determine when, if ever, the *462 drawer of a check may sue a depositary bank which accepts the check and pays out the proceeds in violation of a forged restrictive indorsement. We conclude that in such a circumstance the drawer may have a cause of action against the depositary bank, based on either money had and received or conversion, at least in those cases in which the indorsement, albeit forged, is nonetheless "effective”.
Defendant Bank of New York appeals from a nonfinal order of the Appellate Division pursuant to leave granted by that court, which certified the following question: "Was the order of the Supreme Court, as affirmed by this Court, properly made?” The order of the Appellate Division affirmed an order of Supreme Court, New York County, which denied defendant’s motion to dismiss the complaint for failure to state a cause of action. For the reasons discussed below, the order appealed from should be affirmed and the question certified should be answered in the affirmative.
Initially, we would emphasize that defendant challenges the legal sufficiency of the complaint on its face and before answering, without at this point either conceding or denying any of the factual allegations in the complaint. Due to this procedural context, we of course deem the allegations contained in the complaint to be true (see Siegel, New York Practice, § 265). Moreover, plaintiff is entitled to the benefit of all favorable inferences which may be drawn from the complaint and is deemed to have alleged whatever may reasonably be implied from the complaint (see Westhill Exports v Pope, 12 NY2d 491, 496). So viewed, the complaint alleges the facts described below.
Plaintiff Underpinning & Foundation Constructors, Inc., employed one Walker in its accounting department. His duties included the examination and verification of bills and invoices submitted to plaintiff for payment, the preparation of checks in payment of those debts, the submission of the prepared checks and verified invoices to the appropriate officers of plaintiff for signature, and the forwarding of signed checks to the named payees. From April, 1975 through September, 1976, Walker, acting either alone or in concert with others, embezzled over a million dollars by means of various devices. One of these schemes involved the making of false invoices from firms with which plaintiff did considerable business. Walker would then prepare checks purportedly in payment of those invoices and obtain the necessary signatures from plaintiff’s *463 officers. Rather than sending the checks to the named payees, who of course had no interest in them, Walker forged the indorsements of the named payees by means of stamps apparently similar to those used by the named payees. These stamps contained restrictive indorsements of a type often used in the collecting process, such as "for deposit only”, which require that the checks be deposited in the indorser’s account only (see Uniform Commercial Code, § 3-206, subd [3]). The checks were then either cashed or deposited in savings accounts opened at various banks by Walker or his associates, in names other than the names of the named payee-indorsers. Each of the banks seems to have accepted the checks for collection in complete disregard of the restrictive indorsements, and presented them for payment by the payor bank, which accepted and paid them and charged plaintiff’s account accordingly.
When plaintiff learned of the embezzlement, it commenced this suit against each of the depositary banks which had accepted the checks in disregard of the restrictive indorsement. One named defendant was the Bank of New York, which had accepted 10 such checks with a total face value of $452,979.27. Rather than serving an answer, Bank of New York moved to dismiss the complaint, arguing that the drawer of a check may never sue a depositary bank, but is instead limited to whatever claims it may have against the drawee bank. Supreme Court denied the motion to dismiss and the Appellate Division sustained that determination. It is from the order of the Appellate Division that defendant Bank of New York now appeals.
Whether the drawer of a check has any cause of action against a depositary bank which wrongfully pays on the check is a question which has long divided the courts (see Bailey, Brady on Bank Checks [4th ed], § 15.12; Beutel, Brannan’s Negotiable Instruments Law [7th ed], § 23, pp 447-448). Prior to the enactment of the Uniform Commercial Code, the rule in this State apparently was that the drawer had no cause of action against the depositary bank, and could only seek to recover from the drawee bank (see Trojan Pub. Corp. v Manufacturers Trust Co., NYLJ, May 15, 1947, p 1914, col 5, affd without opn 273 App Div 843, affd without opn 298 NY 771). The code itself contains nothing which directly or specifically changed this rule, but certain provisions thereof have required a re-examination of the prior rule in light of other changes *464 made by the code. Unfortunately for the concept of uniformity in commercial law, the decisions in other States which have reconsidered the situation in light of the code have been far from unanimous in either result or rationale. Thus, in Massachusetts and New Jersey it is still the law that in no situation will a drawer be able to sue a depositary bank (Stone & Webster Eng. Corp. v First Nat. Bank & Trust Co., 345 Mass 1; Life Ins. Co. of Va. v Snyder, 141 NJ Super 539). In California and Georgia, on the other hand, the opposite result has been reached by extending the definition of the term "payor” so as to include the drawer, who is thus given the benefit of the various warranties running to the payor (Sun 'N Sand v United California Bank, 21 Cal 3d 671; Insurance Co. of North Amer. v Atlas Supply Co., 121 Ga App 1). Whatever the ultimate validity of these various rationales, we need not, and accordingly we do not, reach them today. Rather, our examination of the reasons for precluding a drawer from proceeding against the depositary bank in the normal case, convinces us that such a bar should not apply in those situations in which the indorsement, although forged, is effective.
Simply stated, the reason why a drawer is normally held to have no cause of action against a depositary bank which wrongfully paid over a forged indorsement, is that the depositary bank is not deemed to have dealt with any valuable property of the drawer. In those cases in which the forgery is effective, however, this is not true. There are at least three theoretical grounds upon which the depositary bank could be deemed liable to the drawer: (1) conversion of proceeds of the check; (2) liability for money had and received to the extent of such proceeds; and (3) conversion of the instrument itself. Possibly there are others: plaintiff alleges liability based on "gross negligence amounting to bad faith”.[1] Each theory, however, requires that the depositary bank have dealt with property of the drawer, be that property the check itself or the proceeds thereof. In the typical forged indorsement case, the indorsement will be ineffective, and thus the check will *465 not authorize the drawee bank to pay it from the drawer’s account. Absent such authority, the drawee may not charge the drawer’s account — and any payment made on the check is deemed to have been made solely from the property of the drawee, not the drawer. The drawer’s property is thus not converted, and indeed no damages suffered, until the drawee refuses to honor a subsequent authorized draft upon the drawer’s account which is deemed to have remained untouched by the prior payment. Since the money received by the depositary bank from the drawee is the property not of the drawer, but rather of the drawee alone, nothing the depositary bank does with those funds can be considered a conversion of the drawer’s property. Similarly, insofar as the proceeds are the property of the drawee rather than the drawer, the depositary bank has not had and received any money of the drawer. With respect to the possibility of conversion of the check itself, since the drawer is not a holder, and could not present the check for payment, the drawer is normally considered as having no interest in the check. Moreover, since the check cannot be paid over a forged indorsement, the drawer is viewed as having no valuable interest in whatever right the check might otherwise be seen as transferring to the payee and to subsequent holders, for the simple reason that there exists no such right[2] (see Britton, Bills and Notes [2d ed], § 145; 6 Michie, Banks and Banking, ch 10, §§ 87-88).
Whatever the intrinsic validity of these arguments in the typical forged indorsement case in which the forged indorsement is "wholly inoperative” (Uniform Commercial Code, § 3-404), the applicable considerations change when the indorsement, although forged, is yet effective. In such cases, the check is both a valuable instrument and a valid instruction to the drawee to honor the check and debit the drawer’s account accordingly. Since the result of valid payment on the check is the cancellation of a debt otherwise owed the drawer and the payment of funds otherwise claimable by the drawer, the drawer obviously does have an interest in the funds paid on *466 the check. Where the indorsement is ineffective, the drawee is deemed to be paying out its own money because it cannot charge the drawer’s account without authorization. Where, however, the indorsement is deemed effective, then the drawee is in fact paying out funds in which the drawer does have an interest and which may serve as the basis for an action against a depositary bank which has wrongfully obtained that money. Naturally, in such a case, since the indorsement is effective, no action would lie against the depositary bank for payment over the forged indorsement. Moreover, if the check was tainted in some other way which would put the drawee on notice, and which would make its payment unauthorized and subject it to suit, then the above rationale would not apply, since the payment would once again be from the drawee’s funds rather than the drawer’s account, and thus no action would lie against the depositary bank in favor of the drawer. Hence, it is only in those comparatively rare instances in which the depositary bank has acted wrongfully and yet the drawee has acted properly that the drawer will be able to proceed directly against the depositary bank.
Applying these principles to this case, we conclude that plaintiff has stated a cause of action against defendant Bank of New York sufficient to withstand a motion to dismiss for failure to state a cause of action. The allegations in the complaint indicate that the forgery involved in the case falls within the ambit of section 3-405 (subd [1], par [c]) of the Uniform Commercial Code, which provides as follows: "An indorsement by any person in the name of a named payee is effective if * * * (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.” Thus, assuming as we must that these allegations are true, the indorsement was effective, and hence the traditional reasons for refusing to allow a drawer to sue a depositary bank directly in a forged indorsement situation are inapplicable, as the money paid to the depositary bank by the drawee was property in which the drawer had a very real interest.
This does not end our inquiry, however, since the drawer would nonetheless be precluded from suit against the depositary bank unless the other factors discussed above are present: namely, that the check serve as a valid instruction to the drawee to charge the drawer’s account and yet that the depositary bank has acted in such a way as to make it liable *467 to the drawer. These factors are presented by the allegations in this case, since the misconduct involved was payment in disregard of a restrictive indorsement, something with respect to which, of the various banks involved in the collection process, only the depositary bank may be held liable (Uniform Commercial Code, § 3-419, subd [4]; § 3-206, subd [2]). Prior to enactment of the Uniform Commercial Code in this State, any bank in the collection process which took the check following payment in disregard of a restrictive indorsement was deemed liable (Soma v Handrulis, 277 NY 223). This result has been changed by the code, which effectively places liability solely upon the bank which first takes the check with the restrictive indorsement (Uniform Commercial Code, § 3-206, subd [2]). This was done in the belief that it is that bank which is in the best position to ensure that the restriction is satisfied (Uniform Commercial Code, § 3-206, comment 3). Subsequent banks were thus relieved of responsibility to investigate prior restrictive indorsements. Applying this rule to the instant case, it is evident that the drawee cannot be held liable on the basis of the restrictive indorsement; hence the drawee properly honored the check. The depositary bank on the other hand was responsible for checking all restrictive indorsements, and is liable for payment made in violation thereof.
This does not mean that the depositary bank is liable in the instant case as a matter of law, since it is not impossible that it may be able to provide a valid defense. In light of the procedural posture in which this case reaches us, we are, of course, unable to determine whether in fact the depositary bank has any such defense. We have previously held that in an action for money had and received a depositary bank is entitled to any defenses which may be created by the drawer’s failure to use due care in examining his bank statement and returned checks (Federal Ins. Co. v Groveland State Bank, 37 NY2d 252, 258-259). While it may well be that the forgery could not have been discovered by the use of reasonable care, or that in any case the depositary bank’s failure to use due care itself precludes such a defense, that question is not now before us. At any rate, we note that one reason why several courts have been reluctant to allow a drawer to proceed directly against a depositary bank has been the belief that the drawee is normally in the best position as a practical matter to assert such defenses (e.g., Stone & Webster Eng. Corp. v First Nat. Bank & Trust Co., 345 Mass 1, supra; see White & *468 Summers, Uniform Commercial Code, § 15-4, pp 500-501). While this may be true, we do not deem it sufficient to shield a depositary bank from all liability in a situation such as this in which it would appear that the depositary bank is the only entity purposely not completely protected by the provisions of the Uniform Commercial Code from liability for paying in disregard of a restrictive indorsement.
In summary, we hold today that a drawer may directly sue a depositary bank which has honored a check in violation of a forged restrictive indorsement in situations in which the forgery is effective. This result is not only theoretically viable, but is in accord with principles of equity and sound public policy. It is basic to the law of commercial paper that as between innocent parties any loss should ultimately be placed on the party which could most easily have prevented that loss. Hence, in most forged indorsement cases, the party who first took the check from the forger will ultimately be liable, assuming of course that there is no solvent forger available. This is so because it is the party who takes from the forger who is in the best position to verify the indorsement. This is not always true, however, and if the forgery is the result of some other interested party’s negligence, the burden may ultimately be placed on that party (see Uniform Commercial Code, § 3-406). In certain instances in which it is clear that the loss could have been most readily prevented by the drawer, the code may place the loss upon the drawer as a matter of law (Uniform Commercial Code, § 3-405). One such situation might be that alleged to be present in this case, in which the indorsement of a named payee has been forged by "an agent or employee of the maker or drawer [who] has supplied him with the name of the payee intending the latter to have no such interest” (Uniform Commercial Code, § 3-405, subd [1], par [c]). In such cases, the indorsement is deemed to be effective and the drawer is thus precluded from recovering solely on the basis of the forgery from banks which honor the check. The reason for this rule is that it is believed that as a practical matter the drawer is in a better position to prevent the fraud by utilizing proper accounting methods, than is even the first party to take from the forger. Although this presumption is not free from criticism, and may in some instances be less than sound, the language of the code makes it applicable.
Had the forger in this case not forged a check with a restrictive indorsement, it would appear that the loss might *469 properly be placed upon the drawer alone. A restrictive indorsement, however, imposes a new and separate duty upon a transferee to pay the check only in accord with the restriction. In this case, the restrictive indorsements required that the checks be deposited only in the accounts of the respective restrictive indorsers, the named payees. This was not done and the failure to do so serves as a basis for liability independent of any liability which might be created by payment over a forged indorsement alone.
It has been suggested that it is illogical to reach a different result dependent only on whether the forger adds a restriction to the indorsement or not. Although superficially attractive, this argument could as readily serve as a challenge to the soundness of the code provisions imposing a liability upon the drawer where the forger has chosen to act in one way rather than another (see Uniform Commercial Code, § 3-405). The obvious flaw in the argument made is that it ignores the prime function of all these rules and distinctions: to impose liability on the party which could most readily have prevented the fraud. Where the only defect is the forgery itself and the forgery could and should have been prevented by the drawer, liability is imposed on the drawer. Where, however, as here, the indorsement is not only forged, but is also restrictive, and the check is presented in what appears on its face to be an obvious violation of that restriction, then the situation is different, and the balance of obligations and potential liabilities shifts. That an indorsement is forged does not serve to justify a failure to apply normal commercial standards with respect to any restrictions imposed by the indorsement. The presence of a restriction imposes upon the depositary bank an obligation not to accept that item other than in accord with the restriction. By disregarding the restriction, it not only subjects itself to liability for any losses resulting from its actions, but it also passes up what may well be the best opportunity to prevent the fraud. The presentation of a check in violation of a restrictive indorsement for deposit in the account of someone other than the restrictive indorser is an obvious warning sign, and the depositary bank is required to investigate the situation rather than blindly accept the check. Based on such a failure to follow the mandates of due care and commercially reasonable behavior, it is appropriate to shift ultimate liability from the drawer to the depositary bank.
*470 Accordingly, the order appealed from should be affirmed, with costs, and the question certified should be answered in the affirmative.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Fuchsberg concur with Judge Gabrielli.
Order affirmed, etc.

. We note that the complaint in this case states only one cause of action against defendant Bank of New York, and does not indicate the theory of recovery relied upon. This is no longer fatal, however, and we proceed on the assumption that the claim is based on one or all of these theories, each of which is compatible with the allegations of the complaint (see Diemer v Diemer, 8 NY2d 206; Siegel, New York Practice, § 209).

. Insofar as the drawer is deemed to have no interest in the check since he is not a holder, this rationale is suspect in situations such as this in which the payee has no interest in the check and the only person with any beneficial interest in the check at the time of its acceptance by the depositary bank was the drawer. Insofar as the instrument is deemed valueless because it does not serve to authorize payment from the drawer’s account, this particular criticism of the traditional rule would be inapplicable.