■ Merrill Lynch, Pierce Fenner & Smith, Incorporated, Plaintiff, v Chemical Bank, Defendant and Third-Party Plaintiff-Respondent. Federal Reserve Bank of New York, Third-Party Defendant-Appellant. — Order of the Supreme Court, New York County (Sutton, J.), entered August 28, 1980, denying motion of the Federal Reserve Bank of New York for summary judgment dismissing the third-party complaint and denying cross motion of Chemical Bank for partial summary judgment dismissing the main complaint, modified, on the law, to the extent of granting the motion of the Federal Reserve Bank of New York, and otherwise affirmed, without costs. Plaintiff instituted this action to recover $115,180.10 paid by defendant, Chemical Bank, on 13 checks drawn in 1976 and 1977 by plaintiff on its checking account maintained with defendant. Four of the checks were made payable to Acme Steel Partition Co., Inc., Steel Door Corp. and nine to Empire Office Equipment. Each of the 13 checks was deposited in an out-of-State bank and transmitted through the check collection network to defendant, who thereupon paid the item and debited plaintiff's account with the amount. It is undisputed that plaintiff was the victim of a fraudulent scheme engineered by one of its own employees. The modus operandi was as follows: The employee, who worked in plaintiff's accounts payable department, presented plaintiff's check-issuing department with a request for a check to Acme or Empire, concerns with whom plaintiff did business. The employee gave the check-issuing department the vendor number identifying Acme or Empire in plaintiff's accounts, the amount of the check to be issued and a false invoice number, which was a slight variation of a previous one. In this manner the check was prepared without the computer indicating the prior check's existence. The check in payment of the bogus invoice was then delivered by the check-issuing unit to the unscrupulous employee, who directly or with the aid of confederates forged the indorsement of the named payee and deposited the check in an out-of-State bank in an account other than in the name of the named payee. Eventually, the check was transmitted to and paid by defendant, and the account of plaintiff was debited with the amount thereof. Plaintiff's complaint contained three causes of action: (1) that defendant acted negligently and contrary to normal and accepted banking practice in paying the checks despite irregularities apparent on the face of the checks and indorsements, (2) that defendant breached its contract with plaintiff as its depositor by paying the checks contrary to plaintiff's order, and (3) that defendant, by paying the checks over forged indorsements of the payees, converted the checks and their proceeds. Defendant's answer alleged, inter alia, as an affirmative defense, that as a result of the negligence or dishonesty of certain employees of plaintiff, plaintiff's claim was barred by section 3-405 of the Uniform Commercial Code. Defendant, in addition, served a third-party complaint upon the Federal Reserve Bank of New York alleging that seven of the checks (totaling $43,600) were transmitted through the Federal Reserve Bank as collecting bank; that by indorsing said checks and forwarding them for payment, the third-party defendant warranted that it had good title to the checks and that all signatures were genuine or authorized (Uniform Commercial Code, § 4-207); that, in fact, the signature of the payee on each check was not genuine or authorized (because it was forged); that, accordingly, the third-party defendant breached

its warranty of title and was liable to the third-party plaintiff and that if plaintiff recovers from defendant on these seven checks (or any of them), defendant, as third-party plaintiff, seeks recovery to that extent from the third-party defendant. The third-party defendant interposed as a defense to the third-party complaint that the indorsement of the checks in the name of the payee was sufficient and effective to transfer title to the instrument (Uniform Commercial Code, § 3-405, subd [1], par [c]). Special Term found that section 3-405 (subd [1], par [c]) of the Uniform Commercial Code did not provide defendant and third-party defendant with a defense to the respective complaints against them. We hold that section 3-405 (subd [1], par [c]) of the Uniform Commercial Code provides a complete defense to the third-party defendant. The third-party defendant did not breach its warranty of good title to defendant (Uniform Commercial Code, § 4-207, subd [1]). Under the provisions of section 3-405 (subd [1], par [c]) of the Uniform Commercial Code the forged indorsement in the name of the named payee was effective to transfer good title to the check to the third-party defendant and upon the third-party defendant's indorsement, to defendant. Section 3-405 (subd [1], par [c]) of the Uniform Commercial Code so far as pertinent, specifies: "(1) An indorsement by any person in the name of a named payee is effective if * * * (c) an * * * employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." The scope of this section is not restricted to instances where an employee supplies the employer with the name of a fictitious or non-existent payee. It encompasses situations where an employee furnishes the name of an actual or existing person or entity, intending the named payee not to have an interest in the check. The intent of the employee in supplying the name of the payee is the determining factor *(New Amsterdam Cas. Co. v First Pa. Banking & Trust Co.,* 451 F2d 892, 896). The word "supplied" found in that section is not to be construed narrowly. The name of the payee on each check in this case was "supplied" by the employee, notwithstanding the fact that the payee's name may have been transmitted to the check-issuing department through intermediaries *(New Amsterdam Cas. Co. v First Pa. Banking & Trust Co., supra,* at p 897), and the payee may have been a bona fide creditor of the employer (see *Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A.,* 46 NY2d 459, 462). Clearly, when the employee requested the check, he did not intend it for the benefit of the named payee. Even though the forged indorsement was effective to transfer title to defendant (Uniform Commercial Code, § 3-405, subd [1], par [c]), defendant may not obtain dismissal of the complaint. The complaint alleges that there were irregularities apparent on the face of the checks and the indorsements which put defendant on notice that something was amiss. The complaint asserts that the irregularities thus evident were that the purported indorsements of the corporate payees were in blank rather than for deposit only, that the checks were deposited in accounts of parties other than the corporate payees, and that although it appeared from the face of the checks that the named payees were New York concerns, the deposits were made in California or Ohio. A cause of action for negligence is stated, and a factual issue is presented as to whether defendant acted negligently and contrary to normal and accepted banking practice in paying the checks. Section 3-405 (subd [1], par [c]) of the Uniform Commercial Code is not available to defendant to avoid liability for its own negligence. So, too, the other causes of action alleged by plaintiff are valid, and if in fact it is found that a "check was tainted in some * * * way which would put the drawee on notice", payment by the drawee would be unauthorized *(Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A., supra,* at p 466). Concur — Kupferman, Birns and Carro, JJ.

Murphy, P.J., and Silverman, J., dissent in part in a memorandum by Silverman, J., as follows: We agree that the motion of the Federal Reserve Bank of New York for summary judgment should have been granted. We think that the motion of Chemical Bank for partial summary judgment dismissing the complaint should also have been granted. The majority says that the following irregularities should have put Chemical Bank as drawee bank on notice that the checks were tainted in some way: That the purported corporate indorsements were in blank rather than for deposit only; that the checks were deposited in accounts (in other banks) of parties other than the corporate payees; that although the named payees were New York concerns, the deposits were made in California or Ohio. In view of the common practice and usage in the handling of the millions of checks that a large New York bank handles, we think it is plain that these so-called irregularities could not possibly have alerted the bank to the fact that the checks were tainted, indeed it would have been most remarkable if the drawee bank had even noticed them.