INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Appellant-Respondent, v CITIBANK (DELAWARE), Defendant, and CITIBANK, N. A., Respondent-Appellant.

First Department, February 7, 1989

### APPEARANCES OF COUNSEL

*Stephen F. Ellman* of counsel *(David B. Chenkin* with him

on the brief; *Harvis & Zeichner,* attorneys), for respondent-appellant.

*Robert G. Post* of counsel *(Irene Darmochwal* with him on the brief; *Hendler, Murray & Mait, P. C.,* attorneys), for appellant-respondent.

### OPINION OF THE COURT

SMITH, J.

The issues here are (1) whether summary judgment should be granted to the assignee of the drawer of a check against a depositary bank ("the first bank to which an item is transferred for collection", *see,* UCC 4-105 [a]), or (2) whether summary judgment should be granted to the depositary bank against the assignee of the drawer of a check or (3) whether factual issues preclude summary judgment to either. We conclude that summary judgment should be granted to the depositary bank.

This action grows out of an embezzlement scheme perpetrated by Cheryl Callwood, an accounts payable clerk of Duty Free Shoppers Group Ltd. (Duty Free), a business operating at John F. Kennedy Airport in New York City and plaintiff's assignor (drawer). Ms. Callwood was employed by the drawer from March 1985 until January 30, 1986. During the time she was employed, Callwood is alleged to have embezzled at least $136,012.13.

The complaint is brought by plaintiff as assignee of Duty Free, The Insurance Company of the State of Pennsylvania, against Citibank, N. A., the depositary bank, and against Citibank (Delaware), the drawee bank and a separate legal entity from Citibank, N. A. The complaint contains four causes of action. The first three are against Citibank, N. A., and allege breach of contractual obligation, conversion and unjust enrichment respectively. More specifically, it is alleged that from about April 1985 until January 1986 approximately 30 checks in the sum of at least $136,012.13, none of which contained the signatures of authorized representatives of the drawer but all containing forged signatures, were presented to the drawee for payment and paid.

The fourth cause of action and the subject of this appeal is solely against the defendant Citibank, N. A., the depositary bank. As amended, the fourth cause of action alleges that between April 1985 and January 1986, approximately 10 checks totaling at least $117,863.89 drawn on defendant Citi-

bank (Delaware) "were either cashed or accepted for deposit by Citibank in disregard of restrictive indorsements thereon, by persons other than the named payee."

The motion court denied both the plaintiff's motion and the defendant's cross motion for summary judgment. It determined that the issues of fact included whether the drawer (plaintiff) failed to use due care in examining bank statements and returned checks, whether Callwood had the authority to sign checks, whether Citibank, N. A., used due care in paying the disputed items, whether plaintiff drawer should be precluded from asserting lack of ordinary care because of its own failure to report its employee's improprieties within a reasonable time after it received bank statements and canceled checks and whether plaintiff drawer ratified any impropriety.

This case is governed by the general rule in New York that a drawer has no cause of action against a depositary bank but can only seek recovery against a drawee bank. *(Underpinning & Found. Constructors v Chase Manhattan Bank,* 46 NY2d 459, 463 [1979].)

The specific conduct engaged in by Callwood, the drawer's employee, is undisputed insofar as the 10 checks which are the subject of this appeal are concerned. Callwood forged the drawer's signatures on 10 checks drawn on and paid by defendant Citibank (Delaware). The payee on eight of the checks was A&C Caldwell. The payee on one check was A&C Caldwell, Inc. The payee on the other check was A&C Caldwell Assoc. All of the payees were fictitious. All of the checks contained the restrictive indorsement "For deposit only".

None of the checks was indorsed with the actual name of the named payee. Five of the checks were indorsed with the account number, not of the named payee, but of Callwood. Two of the checks were indorsed "credited to within named payee", a fact which was not true. Three of the checks bore no indorsement. All 10 checks bore the letters P.E.G. (prior endorsement guaranteed) on the back.

The account on which the 10 checks were drawn was a special business account rather than an ordinary checking account. It permitted the drawer to constantly check and verify the checks which passed through the account. During each business day Citibank (Delaware) informed the drawer Duty Free of the aggregate sum of checks presented for payment that day and by 5:00 P.M. Duty Free was required to wire funds to Citibank (Delaware) to cover the amount. On the

first business day of each month Duty Free informed Citibank (Delaware) of all checks properly drawn on the account during the prior month. This was called "Issuance Information". Within 12 business days of the end of each month Citibank forwarded to the drawer a number of different statements of the account, as well as the original checks.

Despite the general rule that a drawer has no cause of action against a depositary bank, plaintiff contends that it is entitled to summary judgment. The main contention by the plaintiff is that the decision in *Underpinning & Found. Constructors v Chase Manhattan Bank (supra)* authorizes this action by a drawer directly against a depositary or collecting bank. It contends, second, that summary judgment should be granted where the depositary bank fails to observe due care and commercially reasonable behavior even if the drawer is itself negligent.

Defendant Citibank, N. A. contends that the *Underpinning* decision *(supra)* is inapplicable because the drawer's signatures here were forged and the indorsements on the checks were not effective within the meaning of UCC 3-405 since they were not in the name of the named payee. It contends further that if its demand for summary judgment is rejected, plaintiff's demand should also be rejected.

The *Underpinning* decision *(supra)* does not compel nor authorize relief to the plaintiff here. There, the Court of Appeals held that a "drawer of a check may sue a depositary bank which accepts the check and pays out the proceeds in violation of a forged restrictive indorsement * * * based on either money had and received or conversion, at least in those cases in which the indorsement, albeit forged, is nonetheless 'effective' " *(supra,* 46 NY2d, at 462).

In *Underpinning (supra),* the plaintiff drawer, Underpinning & Foundation Constructors, Inc., employed a person named Walker in its accounting department. From April 1975 through September 1976 he embezzled over a million dollars. One of his schemes involved issuing false invoices from firms which did a lot of business with the plaintiff. Walker prepared checks in payment for the false invoices and received signatures for payment from the plaintiff's officers. Then, instead of sending checks to the named payees, Walker forged the indorsements of the named payees, using stamps similar to those used by the named payees. Despite the fact that the stamps contained restrictive indorsements such as "for deposit

only" and thus should have been applied only to the account of the indorser as required by UCC 3-206 (3), the checks were either cashed or deposited in accounts opened by Walker or his associates at various banks.

In *Underpinning (supra),* after learning of the embezzlement, the plaintiff drawer sued the depositary bank and each of the other collecting banks ("any bank handling the item for collection except the payor bank", *see,* UCC 4-105 [d]) which had accepted the checks in spite of the restrictive indorsements. Before answering, the defendant Bank of New York moved to dismiss the complaint, contending that a depositary bank could never be sued and that plaintiff was limited to any claims it had against the drawee bank.

As stated before, in *Underpinning* the Court of Appeals held "that a drawer may directly sue a depositary bank which has honored a check in violation of a forged restrictive indorsement in situations in which the forgery is effective" *(supra,* 46 NY2d, at 468).

The *Underpinning* decision *(supra)* is not authority for granting summary judgment to the plaintiff drawer here. It is authority for granting summary judgment to the depositary bank. In *Underpinning* the forgery did not include, as it does here, the drawer's signature but only included indorsements on checks. Proper officers had signed the checks even though the invoices were false. Although the indorsements were false, they were nevertheless "effective" under UCC 3-405 (1) (c). That section reads:

"(1) An indorsement by any person in the name of a named payee is effective if * * *

"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

In *Underpinning (supra)* the drawer's employee had supplied the drawer with the name of the payees but intended to obtain the money himself.

*Underpinning (supra)* makes clear that there can be no cause of action by a drawer against a depositary bank where improper action by the drawee bank is also alleged. It states: "Hence, it is only in those comparatively rare instances in which the depositary bank has acted wrongfully and yet the drawee has acted properly that the drawer will be able to proceed directly against the depositary bank" *(supra,* 46 NY2d, at 466).

A prime reason for the *Underpinning* decision *(supra)* was that the drawee bank could not be held liable to the drawer for a violation of the restrictive indorsements since it had no knowledge of the violations and properly honored the checks. On the other hand, the depositary bank, which had ignored the restrictive indorsements, could be held liable. In this case, unlike *Underpinning,* the drawer can sue the drawee bank, Citibank (Delaware), and has brought an action against it, although plaintiff did not move for summary judgment against the drawee bank.

The rationale for permitting a drawer to sue a depositary bank where a forged indorsement is effective is that the depositary bank is dealing with property belonging to the drawer. *(Underpinning & Found. Constructors v Chase Manhattan Bank, supra,* 46 NY2d, at 464-465.) Apparently, the indorsements with the name of the named payees, indorsements which appeared similar to the usual indorsements of those payees, were sufficient to make the indorsements effective so that the drawee bank was authorized to pay out funds belonging to the drawer. Where the indorsement is ineffective, for instance here where the indorsement is not in the name of the named payee, no funds of the drawer are involved but only those of the drawee bank. *(Underpinning & Found. Constructors v Chase Manhattan Bank, supra,* 46 NY2d, at 465.)

A second reason why the *Underpinning* case *(supra)* is not dispositive of the motion and cross motion for summary judgment is that the *Underpinning* decision simply upheld a complaint against a motion to dismiss. There was no ultimate disposition of the action. The defendant depositary bank was still able to put in its defenses. Even though a complaint by a drawer against a depositary bank is upheld, "This does not mean that the depositary bank is liable * * * since it is not impossible that it may be able to provide a valid defense." *(Underpinning & Found. Constructors v Chase Manhattan Bank, supra,* 46 NY2d, at 467.)

Accordingly, order, Supreme Court, New York County (Diane Lebedeff, J.), entered April 28, 1988, which, *inter alia,* denied the plaintiff's motion for summary judgment and further denied the defendant's cross motion for summary judgment, should be modified, on the law, defendant's cross motion for summary judgment dismissing the fourth cause of action granted and the order otherwise affirmed, without costs.

Carro, J. P., Milonas and Kassal, JJ., concur.

Order, Supreme Court, New York County, entered on April 28, 1988, unanimously modified, on the law, defendant's cross motion for summary judgment dismissing the fourth cause of action granted and the order otherwise affirmed, without costs and without disbursements.