OPINION OF THE COURT
Richard Rivera, J.
Although these matters were not consolidated, they were tried together because of the similarity of factual and legal issues. After trial, the relevant facts are as follows.
FACTUAL BACKGROUND
The Davis Plaintiffs
. In 1992, defendant Chase Manhattan Bank (Chase) worked together with defendant Farley and his group, defendant Committee for First Home Owners, Inc. (the Committee), on a program intended to attract first time home buyers who were looking for mortgages. From the testimony, it appears that Farley and the Committee would find the would-be home buyers and introduce them to Chase representatives at meetings designed to explain how the home buyers could apply for mortgages through Chase.
The Davis plaintiffs attended several of these meetings in late 1992. In particular, they attended a meeting at the defendant Elim International Fellowship Church (Elim) in December *427 1992. Farley and Chase representatives attended the meeting also. At this meeting, Farley and Chase explained the mortgage application procedure to the plaintiffs which, according to plaintiffs’ uncontradicted testimony, included filling out a mortgage application and depositing 10% of the purchase price with Chase.
The Davises completed the application at the December 1992 Elim Church meeting. Ms. Davis testified without contradiction that Chase subsequently confirmed in writing that it had received this application. Later, on January 25, 1993, Ms. Davis delivered a personal check in the amount of $6,500 to Chase at its Metro Tech Branch office in Brooklyn. The check was drawn on Mr. Davis’ Emigrant Savings Bank account and represented the required deposit for the home they wished to buy. This check named Chase as the payee, and a Chase employee accepted it. The memo portion of the check contains the notation “3/120-Home Deposit”.
The back of the check contains Chase’s stamped notation “Credited to the account of the within named payee The Chase Manhattan Bank Boro Hall Branch #43”. Superimposed upon Chase’s stamp is the signature of “Robert B. Farley” and the notation “For Credit to Committee for First Home Owners Inc”. Handwritten below that is a series of numbers which appear to be an account number for either Farley or the Committee. Further below both the Chase stamp and Farley’s indorsement is another Chase stamp with several numbers and the date of deposit, January 26, 1993.
Ms. Davis testified that, even though her check was cashed, Chase never took action on her mortgage application. When she investigated the matter further and spoke with Farley, he acknowledged that he had deposited the check into the defendant Committee’s bank account with Chase. Plaintiff demanded that the defendant Committee return or refund the check, but it never did. In July 1993, Ms. Davis also contacted Chase and demanded the return or a refund of the check. Chase never contacted her regarding the status, denial, or approval of her mortgage application, and it never returned or refunded the check.
Subsequently, she commenced this litigation alleging that Farley defrauded them, and that Chase’s acceptance and negotiation of their check was wrongful.
The Huggins Plaintiff
Plaintiff Clive Huggins testified that he, too, attended a meeting of the defendant Committee at the Elim Church in *428 December, 1992 where three (3) Chase representatives were present. One of those bank representatives (Ralph Lewis) had been present at the meeting the Davis plaintiffs had attended.
On March 29, 1993, as instructed by defendant Farley and the Chase representatives, plaintiff Huggins completed a mortgage application and handed it to Farley together with a check for the required deposit ($8,000) payable to “Chase” and drawn on his (Huggins’) checking account with Chase. Mr. Huggins testified that he gave the check to Farley because the Chase representatives said that they were working hand-in-hand with Farley who, in turn, told Huggins that he would deliver the application and check to Chase. According to Farley, Chase would hold the check in escrow pending action on Huggins’ mortgage application. As Huggins later discovered, Chase never acted upon his mortgage application, Farley deposited the check into his or the Committee’s checking account with Chase, and Chase paid the proceeds of his check to Farley. When Huggins called Farley on several occasions to request the return of his money, Farley did not answer. Ultimately, Huggins got a telephone recording indicating that Farley’s telephone service had been disconnected.
Defendants Farley and the Committee for First Home Owners, Inc. defaulted in answering the complaints in both of these matters. Defendant Elim International Fellowship Church submitted an answer to Mr. Huggins’ complaint but failed to appear for trial. Thus, Chase was the only defendant to appear at trial.
At the conclusion of both plaintiffs’ case, Chase rested without presenting any witnesses to contradict or question plaintiffs’ testimony.
Chase, however, moved to dismiss the complaints arguing that both plaintiffs were negligent in allowing Farley to cash their check and are therefore precluded from recovering against Chase. (UCC 3-406.) Alternatively, Chase argues that since Farley was the intended payee of both plaintiffs’ checks, plaintiffs received what they bargained for. Regarding the Davis plaintiffs, Chase further contends that it stands in the position of the depository bank with respect to their check, and relies upon the well-settled common-law rule which holds that a drawer (the Davis) does not have a cause of action against a depository bank (Chase) that collects an improperly indorsed check. (Horovitz v Roadworks of Great Neck, 76 NY2d 975 [1990].)
As pleaded and argued, both plaintiffs’ theory of recovery against Chase is based upon the Uniform Commercial Code *429 provisions regarding a depository bank’s liability for the negligent negotiation of checks.
The Davis plaintiffs agree that Chase was the depository bank on their check to Chase. Relying upon Underpinning & Found. Constructors v Chase Manhattan Bank (46 NY2d 459 [1979]), however, they maintain that Chase was negligent in negotiating their check to Farley and allowing him to cash the proceeds, and that such negligence subjects Chase to liability.
For his part, plaintiff Huggins argues that Chase stands in the position of a “drawee” bank in his case, and that, as such, Chase is liable to him for paying the proceeds of his check to Farley on an unauthorized indorsement.
DISCUSSION
The Davis Case
Prior to the enactment of the Uniform Commercial Code, the New York rule had been “the drawer had no cause of action against the depositary bank, and could only seek to recover from the drawee bank”. (Underpinning & Found. Constructors v Chase Manhattan Bank, supra, at 463.) In Underpinning, however, the New York Court of Appeals recognized an exception to the general rule where depository banks negligently accept ineffectively indorsed commercial paper for collection.
In Underpinning (supra), accountants embezzled funds from their company by preparing false bills and invoices for goods purportedly ordered by their employer’s customers, inducing their company to issue checks paying for these fraudulent orders, and forging the named payees’ signatures on the checks. Those involved in the scheme restrictively indorsed the checks (e.g., “for deposit only”) and then either cashed or deposited them in personal savings accounts opened at various banks under names other than those of the named payees/indorsers. Each depository bank accepted the checks for collection in complete disregard of the restrictive indorsements and presented them for payment to the drawee bank which accepted and paid them and charged the drawer’s account accordingly. When it learned of the scheme, the defrauded company sued the depository banks for disregarding the restrictive indorsements on the checks and paying on them.
Under these circumstances, the Court determined that the depository bank had acted wrongfully in accepting the checks for collection notwithstanding their restrictive indorsements. *430 Moreover, the Court noted, while it may have been true prior to the enactment of the Uniform Commercial Code that “any bank in the collection process which took the check following payment in disregard of a restrictive indorsement was deemed liable” (supra, at 467 [emphasis added]), the Code changed this rule by placing liability “solely upon the bank which first takes the check with the restrictive indorsement”, i.e., the depository bank. (Supra, at 467; UCC 3-206 [2].) This change was based upon the policy consideration that the depository bank “is in the best position to ensure that the restriction is satisfied”. (Supra, at 467.)
Based upon the facts before it, the Court in Underpinning (supra) found that none of the other banks involved in the collection process (specifically, the drawee bank) had acted negligently because the indorsements, although forged, were effective as that term is understood under the Uniform Commercial Code. The Court then expressed the rule that “in those comparatively rare instances in which the depository bank has acted wrongfully and yet the drawee has acted properly * * * the drawer will be able to proceed directly against the depository bank.” (Supra, at 466.)
Although the Court in Underpinning (supra) stated that this exception to the general rule applies to forged indorsement cases, the Court of Appeals later clarified that the rule stated in Underpinning “is not limited to situations where the payee’s name is forged, but instead applies whenever a check is ineffectively indorsed”. (Horovitz v Roadworks of Great Neck, supra, at 976.)
In the present case, the Davis plaintiffs have stated a cause of action against Chase based upon the principles enunciated in Underpinning (supra). Chase was both the named payee and the depository bank on their check. As depository bank, Chase effectively indorsed the Davis’ check by placing a stamp on it indicating that the check was credited to the payee’s account. (Marine Midland Bank v Price, Miller, Evans & Flowers, 57 NY2d 220, 226-227 [1982] [holding that a stamp placed by the depository bank stating that the check had been credited to the payee effectively served as the customer’s indorsement]; see also, UCC 4-205.) This stamp was effective as the payee’s indorsement. (Supra; UCC 4-205 [1].) Although in its role as depository bank Chase knew that the check was restrictively indorsed, it nevertheless negotiated the check to Farley, collected it and allowed him to deposit it in an account either he or the Committee had with Chase in violation of the restrictive *431 indorsement. Ultimately, Farley withdrew the proceeds of the Davis’ check from his Chase account and disappeared. Seeing an effectively indorsed check, the drawee bank (Emigrant Savings Bank) properly charged the Davis’ account for the amount of their check. Since the drawee bank in this case (Emigrant) acted properly and the depository bank (Chase) acted wrongfully, Chase is liable to the Davis plaintiffs (the drawers) for the value of the check in conversion. (Underpinning & Found. Constructors v Chase Manhattan Bank, supra, at 466.)
There is no merit to the argument advanced by Chase that UCC 3-406 precludes plaintiffs’ recovery. There is no evidence in the record showing that plaintiffs were negligent or that their actions substantially contributed to the placement of Mr. Farley’s indorsement on these checks. Similarly, there is no indication in the record that plaintiffs intended Mr. Farley to be the payee of these checks as argued by Chase.
The Huggins Case
The Court finds that Mr. Huggins is also entitled to judgment against Chase. In Mr. Huggins’ case, Chase was payee on his check as well as the depository and drawee bank. Unlike in the Davis case, Chase did not indorse Huggins’ check. Nevertheless, Chase (as depository bank) accepted Huggins’ check for deposit and credited the account of an indorser (Farley) who was not named as payee.
The well-settled rule is that “when a drawer issues a check in the name of a particular payee, the drawee bank is to apply funds from the drawer’s account to its payment only upon receiving the payee’s authorized indorsement”, and it may not debit its customer’s account when it pays over an improper indorsement. (Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, 444 [1982].)
In this case, Farley’s indorsement without any indorsement by the named payee (Chase) was ineffective under the Uniform Commercial Code, and the drawee bank (Chase) is liable for Huggins’ loss because it was in a position to detect the improper indorsement before payment. (Spielman v Manufacturers Hanover Trust Co., 60 NY2d 221 [1983].)
As stated above with respect to the Davis plaintiffs, there is no merit in Chase’s argument that Mr. Huggins was negligent or that his actions contributed to the placement of Mr. Farley’s indorsement on his check. There is also no evidence showing that Mr. Huggins intended Mr. Farley to be the payee of his check.
*432 CONCLUSION
Accordingly, for the reasons stated above, plaintiffs in both cases are entitled to judgment against defendants Chase. Plaintiffs are also entitled to judgment against defendants Farley and the Committee for conversion. Plaintiff Huggins’ complaint against defendant Elim is dismissed as he produced no evidence nor advanced any theory of recovery against this defendant.