## Olean Area Camp Fire Council, Inc., Plaintiff, v Olean Dresser Clark Federal Credit Union, Defendant.

Supreme Court, Cattaraugus County, February 21, 1989

### APPEARANCES OF COUNSEL

*Hornburg, Diggs & Marks, P. C.,* for plaintiff. *Gorsse, Rossetti, Chelus & Herdzik, P. C.,* for defendant.

## OPINION OF THE COURT

EDWARD M. HOREY, J.

For decision are motions for summary judgment made by both the plaintiff and defendant.

What gives rise to the action and in turn the motions at bar are the following facts:

Sharon Nolan was an employee of the plaintiff, Olean Area Camp Fire Council, Inc. Her official position was that of secretary and bookkeeper. Her principal activities appear to be forging checks upon the plaintiff's bank account. Despite the fact that she had no authority to draw checks on account of the plaintiff, she nonetheless did so on 10 separate occasions. She has been duly charged and convicted of the forgeries alleged in the plaintiff's complaint. The total loss to the plaintiff as a consequence of the forgeries is $8,516.

For facility in following what occurred, it is noted that the plaintiff, Campfire, hereinafter referred to as depositor-maker, maintained a bank account at the Exchange National Bank in Olean, New York. That bank is hereinafter referred to as the drawee of the checks involved.

The defendant, Olean Dresser Clark Federal Credit Union, is the bank in which Sharon Nolan first presented all of the 10 checks in issue. It is hereinafter referred to as the depositary bank. It is also referred to as the payee since all 10 checks were made payable to its order.

Upon examination it appears that the 10 checks fall into three general categories, to wit: those checks which are six in number that bore restrictive endorsements of "deposit only" or "deposit"; (2) one check which bore the endorsement of "Sharon Nolan"; and (3) three checks which bore no endorsements.

Because various legal principles of law of negotiable instruments appear to apply this court will treat the three groupings of checks separately.

The court treats first the six checks which bore restrictive endorsements when received by the depositary bank-payee, viz., checks Nos. 1540, 1526, 1474, 1376, 1407, 1418.

There are a number of unusual aspects in the facts presented in the case at bar. First is the fact that the signature of both the maker and that of the endorser were forged by an employee of the depositor plaintiff. Second is the fact that the payee of the checks was the depositary bank which in each

instance failed to follow the restrictive endorsement and deposited the funds to the account of the forger-employee rather than in its own account.

To reach a conclusion on the issue presented it is helpful to recall some basic principles of law of negotiable instruments.

First it is to be recalled that it is axiomatic that a drawee bank in the first instance has no right to debit the account of a depositor-maker on a check which bears the forged or unauthorized signature of the depositor-maker. The reason for this principle is that the implied contract between the bank and its depositor is that the bank will pay out the funds of the depositor only upon order from the depositor to that effect. It follows, then, that if the bank pays out funds upon the instrument purporting to be the check of its depositor, the signature upon which turns out to be a forgery, no right exists in the bank to charge the amount of the item against the account of the depositor, since the payment was wholly without any authority from him. *(See,* Britton, Bills and Notes § 132, at 592; *Denbeigh v First Natl. Bank,* 102 Wash 546, 174 P 475; *see also, National Bank of Commerce v National Mechanics' Banking Assn.,* 55 NY 211, 213, and NY cases there cited.)

While as noted the drawee bank is required to know the signature of the depositor-maker *in the first instance,* it is also an established principle that subsequent events may create a right in the drawee bank to debit the depositor-maker's account in whole or in part of the amount of the check. Thus the initial liability of the drawee bank may be dissolved by the subsequent fault of the depositor. This is when such depositor is so situated that he can prevent losses to the drawee bank. It is stated that in shifting the risk of loss from the drawee to the depositor our courts have drawn on one or more legal principles, viz., that of ratification, of estoppel and of contract. But whatever principle is used there is no longer any question but that a depositor assumes the risk of loss "for *some* unauthorized, forged and altered checks." (Britton, Bills and Notes § 137, at 595-597.)

Note is made at this point that in the case at bar the plaintiff depositor has not made the drawee bank a party defendant in the action. Neither has the depositary bank defendant asserted any cross claim against the drawee. This court can only speculate why the plaintiff refrained from naming the drawee a defendant. It is clear that the multiplic-

ity of forged checks and the failure of the plaintiff depositor to discover the forgeries at an earlier date might be a defense to the drawee bank, if sued. While the tactics of avoiding suit against a defendant with possible defenses might explain the failure of the plaintiff depositor to sue the drawee bank, no good reason suggests itself as to why the depositary bank defendant has not claimed over against the drawee and thus provided a procedural basis for the determination of the right of all parties, complicated as they may be. We must deal, however, with the action as presented which is an action against only the depositary bank by the depositor.

That the defendant, Olean Dresser Clark Federal Credit Union, is a depositary bank cannot be disputed. It was the first bank to which all checks in issue were transferred for collection. As such it falls squarely within the definition of a depositary bank under the Uniform Commercial Code. UCC 4-105 (a) defines a depositary bank as follows: " 'Depositary bank' means the first bank to which an item is transferred for collection even though it is also the payor bank".

In the now celebrated action of *Underpinning & Found. Constructors v Chase Manhattan Bank* (46 NY2d 459 [1979]) Judge Gabrielli, writing for the Court of Appeals, carved an exception out of the conceded general rule that a depositor-drawer may never sue a depositary bank but is limited to an action against the drawee.

In *Underpinning (supra)* it was held that in the instance where an endorsement is forged but is *restrictive* and the check is presented in what appears on its face an obvious violation of that restriction, the general rule is not applicable and the depositor-drawer may recover from the depositary bank. The court posited that a restrictive endorsement "imposes a new and separate duty upon a transferee to pay the check only in accord with the restriction." (46 NY2d, *supra,* at 469.) The reason stated for the exception was that it was the depositary bank "which is in the best position to ensure that the restriction is satisfied". (46 NY2d, *supra,* at 467.)

Dealing as we are in the instant action with restrictive endorsements the plaintiff urges the application of the decision in *Underpinning (supra).*

The defendant depositary bank to the contrary argues forcefully that the decision in *Underpinning (supra)* is not applicable because the signature of the depositor-maker in the instant case was forged and that thus there was no valid instruction to the drawee bank to make payment.

Upon examination it appears to be true that in *Underpinning (supra)* the signature of the maker was valid and only the endorsement was forged. In contrast, in the instant case both the signature of the maker and its endorsement were forged. *Sed quaere* does this fact take the instant case outside the rule established in the *Underpinning* decision?

The court concedes that it has not found either decisional law or text authority which has passed on the issue. It appears to be one of first impression.

It is the opinion and decision of this court that the instant case falls within the exception found in *Underpinning v Chase Manhattan Bank (supra)* and that thus summary judgment should be awarded the plaintiff depositor on the six checks first noted above and that summary judgment on such checks should be denied to the defendant, the depositary bank.

This court founds its decision primarily on the reason which prompted and supported the determination in *Underpinning (supra)*. That was that the defendant depositary bank was in the first and best position to discover the fraudulent instrument and prevent the fraud. *(See,* 46 NY2d, *supra,* at 469.)

It is clear to this court that if the defendant depositary bank in the instant case had followed the instruction of the restrictive endorsement and placed the proceeds in its account as payee, the fact of the fraud would have been discovered earlier. This obligation on the part of a taker to apply the proceeds in a manner consistent with a restrictive endorsement was reemphasized by our Court of Appeals in *Spielman v Manufacturers Hanover Trust Co.* (60 NY2d 221, 226). The same reasoning was noted by the Fourth Department in *Tette v Marine Midland Bank* (78 AD2d 383, *appeal dismissed* 54 NY2d 681) when it said "the latter type of bank [i.e., a depositary-collecting bank] often will be in a better position than the former [i.e., a drawee-bank] to discover a forged or unauthorized indorsement." *(See,* 78 AD2d, *supra,* at 388.) The obligation to follow precisely a restrictive endorsement was reemphasized in *Five Towns Coll. v Citibank* (108 AD2d 420, 431 [2d Dept 1985]).

In the opinion of this court the flaw in the defendant's argument in the instant case is the same flaw noted by the Court of Appeals in *Underpinning,* to wit: "it ignores the prime function of all these rules and distinctions: to impose liability on the party which could most readily have prevented the fraud." (46 NY2d, *supra,* at 469.)

What this court holds here is only this and nothing more, to wit: that in an action by a depositor-drawer against a depositary bank *which is also a real and nonfictitious payee* for failure to follow the terms of a forged restrictive endorsement on a check, neither the forgery of the maker's signature nor the subsequent negligence of the drawee in failing to discover that forged signature is a defense. In such instance the depositary bank-payee is liable to the depositor-maker. If the decision reached is, as it appears to be, an extension of the decision in *Underpinning (supra)*, it is a limited one made applicable only in the instance that the depositary bank is also the payee. It is the rationale of the *Underpinning* case that compels the extension. *Leonard Smith, Inc. v Merrill Lynch, Pierce, Fenner & Smith* (113 AD2d 387, *appeal dismissed* 67 NY2d 984) is not to the contrary because there the depositary bank was not also the payee and the forged endorsement was not "effective." The court has studiously delimited its holding because it is the opinion of this court that all of the ramifications which flow from the exception made by the *Underpinning* case and others which have succeeded it have not yet been resolved.

The reason for the holding which is made is again that recited in *Underpinning,* to wit: "[a] *restrictive endorsement, however, imposes a new and separate duty upon a transferee to pay the check only in accord with the restriction." (Underpinning & Found. Constructors v Chase Manhattan Bank,* 46 NY2d, *supra,* at 469; emphasis supplied.) In the instant case as in *Underpinning* the restrictive endorsements required that checks be deposited only in the account of the named payee. This was not done. *"[T]he failure to do so serves as a basis for liability independent of any liability which might be created by payment over a forged indorsement alone." (Underpinning & Found. Constructors v Chase Manhattan Bank,* 46 NY2d, *supra,* at 469; emphasis supplied.)

In *Underpinning* our Court of Appeals held that the failure to follow the mandate of the restrictive endorsement was not "due care" and was not "commercially reasonable behaviour". *(Supra,* at 469.) As a consequence it held it is appropriate "to shift ultimate liability from the drawer to the depositary bank." *(Underpinning Found. Constructors v Chase Manhattan Bank,* 46 NY2d, *supra,* at 469.)

Whatever merits arguments to the contrary would have under other circumstances, they have no application in the instant case. This is for the reason that the depositary bank

not only failed to follow the terms of the restrictive endorsement, it failed to follow the restrictive endorsements which made the proceeds payable only to itself. It takes little imagination on the part of this court to conclude that if the defendant depositary bank and payee had followed the terms of the restrictive endorsement and paid the check to itself, little or no time would have elapsed before someone in that bank would have questioned what the payment was for and the fraud and forgery would have been discovered. Additionally, if the restrictive endorsement had been followed the money would have been in the hands of the depositary bank-payee from whom the defrauded party could have recovered it. Instead, the depositary bank and payee accepted the oral statement of the forger that notwithstanding the restrictive endorsement on the checks the money belonged to the forger. On this oral assertion the depositary bank and payee paid the money over to the forger. The court reserves its comments on this conduct to the conclusion of this decision.

The court concludes that if, as in *Underpinning (supra)*, liability can properly be placed upon a mere depositary bank for failure to follow the terms of a restrictive endorsement, it follows a fortiori that liability be imposed where the depositary bank is also the payee. Certainly the latter misconduct is a more egregious violation of "reasonable commercial standards" and as such is conversion within the meaning of UCC 3-419 (3).

The most recent decision of *Insurance Co. v Citibank* (145 AD2d 218) is to be distinguished.

It is a case which at first blush would seem to be decisive of the case at bar, and for the defendant. On analysis, however, it is not. In *Insurance Co. (supra)*, there was, as in the case at bar, a forgery of the name of the maker and also that of the endorser. The principal difference, however, is that in *Insurance Co.*, the payees were fictitious and nonexistent. In the case at bar, the payee, Olean Dresser Clark Federal Credit Union, is a real existent nonfictitious payee.

In its analysis of *Underpinning (supra)*, Justice Smith, speaking for the First Department, said in *Insurance Co. (supra,* at 223): "The rationale for permitting a drawer to sue a depositary bank where a forged indorsement is effective is that the depositary bank is dealing with property belonging to the drawer. *(Underpinning & Found. Constructors v Chase Manhattan Bank, supra,* 46 NY2d, at 464-465.)* Apparently,

the indorsements with the name of the named payees, indorsements which appeared similar to the usual indorsements of those payees, were sufficient to make the indorsements effective so that the drawee bank was authorized to pay out funds belonging to the drawer. *Where the indorsement is ineffective, for instance here where the indorsement is not in the name of the named payee, no funds of the drawer are involved but only those of the drawee bank. (Underpinning & Found. Contractors v Chase Manhattan Bank, supra,* 46 NY2d, at 465.)"

Dealing as it was with endorsements of fictitious payees, in contrast to those of existing, nonfictitious payee as in the case at bar, this court has no quarrel with the decision in *Insurance Co. (supra).*

However, in the case at bar the endorsement on the six checks was effective within the meaning of UCC 3-405 precisely as such endorsements were effective in *Underpinning (supra).* In both *Underpinning* and the case at bar, there was a real nonfictitious payee. In both cases there were restrictive endorsements placed on the checks. The restrictive endorsements in *Underpinning* were held to meet the requirements of UCC 3-405 so as to become statutorily effective and the same result must follow as a matter of logic in the case at bar.

UCC 3-405 provides in relevant part that

·"(1) An endorsement by any person in the name of a named payee is effective if * * *

"(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument".

This is precisely the case presented in the case at bar. Sharon Nolan, a person employed by the maker, Campfire Girls, Inc., signed six checks payable to a real and nonfictitious payee, Olean Dresser Clark Federal Credit Union, and she signed the checks by a restrictive endorsement on behalf of the maker intending that such payee would have no interest in those checks.

Again, if the restrictive endorsement "for deposit only" made the checks in *Underpinning (supra)* "effective" within the meaning of UCC 3-405 where the payees were real and existent, such endorsements are equally effective in the case at bar.

It is true, and concededly so, that in *Underpinning (supra)* the signature of the makers were not forged and in the instant case they were. Thus in *Underpinning* the court was free to note that the situation presented was one where the

depositary bank had acted wrongfully and the drawee had acted properly. *(See,* 46 NY2d, *supra,* at 466.) But *Underpinning* never passed on the situation presented here where successively both the depositary bank and the drawee acted wrongfully. Nor has any other case passed upon the factual situation presented in the case at bar. At least none has been discovered.

The narrow class to which the decision in *Underpinning (supra)* was stated to be applicable came from the court's difficulty with the concept of privity of parties and that of property of the maker in a check. This disturbed the Appellate Division, Third Department, and the Court of Appeals in reaching their decisions. These difficulties are all avoided where the action is between maker and a payee, which is also, incidentally, a depositary bank. In such instance the payee is dealing with property of the maker and there is privity between the maker and the payee. There is thus no need to delimit the right of a maker to sue a depositary bank to only the situation wherein the depositary bank acted wrongfully and the drawee acted properly. The need for such delimiting is gone when the depositary bank is also the payee.

Stated differently hopefully for facility of comprehension, when such a situation is presented the delimiting legal constraints of actions for conversion or money had and received which prompted the court in *Underpinning (supra)* to limit the right of a maker to sue a depositary bank to the case where only the depositary bank acted wrongfully and the drawer properly are gone. Insofar as the limitation of *Underpinning* is concerned the action is properly viewed as one of maker against payee/depositary bank and not maker against depositary bank.

If in the instant case the defendant was merely a depositary bank, this court would deny plaintiff's motion for summary judgment. But with repeated notation, in the case at bar the defendant is not merely a depositary bank, it is also a real nonfictitious payee. As such payee, it failed to follow the terms of the restrictive endorsement and accepted the checks into its own account as ordered. Instead it blithely gave the proceeds over to the forger on six separate occasions. Clearly this is wrongful conduct and the defendant should be made to answer for it, especially as the case is presented to the court.

For the defendant here has not crossed over against the drawee bank, claiming that it was the wrongful conduct of the

drawee in honoring the forged signatures of the maker that caused the plaintiff's loss. Rather it presents itself to the court by pointing to only one statement in *Underpinning (supra)* which was not presented for decision and ignores completely the underlying basis of the *Underpinning* decision which was that the depositary bank which could have first and best presented the fraud should be held liable.

By analogy to the field of negligence, if two parties are concurrently negligent but only one is sued and the other is not joined as a party, the action proceeds against the one who was allegedly negligent and was sued. If it appears that such negligence exists, that single defendant is held liable to the plaintiff.

By a parity of reasoning and on the lengthy analysis of *Underpinning (supra)* and its rationale, this court holds the defendant liable to the plaintiff maker and grants the plaintiff summary judgment on the six checks bearing restrictive endorsements.

In so doing, note is expressly made that the defendant here argues only that a cause of action in favor of the plaintiff does not exist. The defendant does not assert that factual questions exist. As indicated, this court finds that the defendant does not urge any *valid* defenses.

The court turns at this point to a consideration of the four remaining checks in issue.

Check No. 1273 named as the payee "Dresser Clark", the defendant. The endorsement on that check when presented to the depositary bank was "Sharon Nolan". The proceeds of the check were deposited in an account of Sharon Nolan at the depositary bank again apparently on the assertion of the forger, Sharon Nolan, that the proceeds of the check were for her.

UCC 3-419 provides in relevant part:

"(1) an instrument is converted when * * *

"(c) it is paid on a forged indorsement."

The only escape from liability on the part of a party which has dealt with such instrument is one who has dealt with the instrument "in good faith and in accordance with the reasonable commercial standards". *(See,* UCC 3-419 [3].) Note is made that UCC 3-419 (3) expressly includes "a depositary or collecting bank".

It has been consistently held that the acceptance of a check

bearing an endorsement in the name of a party other than the payee is not a dealing which is either one done in good faith nor in accordance with reasonable commercial standards. *(See, Costello v Oneida Natl. Bank & Trust Co.,* 109 AD2d 1085 [4th Dept 1985], *affd* 66 NY2d 619; *Millens v Kingston Trust Co.,* 118 Misc 2d 512.)* As a consequence, this court holds that the defendant depositary bank is liable in conversion to the plaintiff depositor-maker on check No. 1273.

Lastly, the court considers the three remaining checks, viz., (1) check No. 1468 which named as the payee "Dresser Ind. Emp. Ben. No. 403" and which contained no endorsement when presented to the defendant depositary bank and (2) check No. 1615 which named as the payee "Dresser Clark" and which contained no endorsement when presented to the defendant depositary bank and (3) check No. 1236 which named as the payee "Dresser Clark Credit Union" and which contained no endorsement when presented to the defendant depositary bank. Each of these three checks were credited to the account of the forger—Sharon Nolan.

Of the 10 checks involved in this action, the last three noted which bore no endorsement present the most difficult problem. The root of the problem again lies in the fact that the defendant was not only the first or depositary bank to which the checks were taken but also was the named payee in each of these three checks.

As payee no prior endorsement was required. As payee it is argued that the defendant was free to do with the proceeds whatever it elected to do, specifically including what in fact it did do, to wit: crediting the proceeds in the accounts of Sharon Nolan, the forger.

Concededly after days of research on this issue this court is satisfied that none of the cases, text authorities and arguments advanced by either plaintiff or defendant are decisive of the issue. It is the conclusion of this court that the rights of the parties are to be determined on whether or not the defendant is a holder in due course. If the defendant is a holder in due course then it has appropriate defenses to the action. See UCC 3-305 which sets forth the rights of a holder in due course and includes the right to take the check "free from (1) all claims to it on the part of any person". *(See,* UCC 3-305 [1].)*

Contrarywise if the defendant is not a holder in due course then the defendant has only the rights of one not a holder in

due course which are specified in UCC 3-306. That section provides in pertinent part that unless one has the rights of a holder in due course, that person takes the checks "subject to (a) all valid claims to it on the part of any person". *(See,* UCC 3-306 [a].)

UCC 3-302 defines a holder in due course. Subdivision (2) of UCC 3-302 specifically provides that "[a] payee *may be* a holder in due course." (Italics added.)

The Commentary to UCC 3-302 points out that whether or not a payee is to be considered a holder in due course depends upon whether the payee meets all the specified qualifications of a holder in due course which are that the payee has taken the checks "for value" and "in good faith" and "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *(See,* UCC 3-302 [1] [a], [b], [c].)

Recourse to decisional law discloses a dearth of actions by a depositor-maker against a payee. Happily there are a few recorded decisions which are analogous to the situation at bar.

In *Munn v Boasberg* (292 NY 5 [1944]) a drawer of a check sued the payee under facts which disclosed as in the instant case that a party had obtained a check from the maker by fraudulent representation then presented the check to the payee who applied the funds not to its own purposes but to the benefit of the defrauding party. The defense was raised that the payee was a holder in due course. To this defense our Court of Appeals stated: "Under the provisions of the Negotiable Instruments Law, the burden was cast upon the defendant to prove that he, or some person under whom he claimed, acquired title to the check as a holder in due course (§ 98). This he could not do because the check itself was constructive notice that the funds it represented were funds of the plaintiff which could not be applied in payment of the agent's personal indebtedness without inquiry of the principal." *(Supra,* at 9.)

Judgment in favor of the plaintiff by the Fourth Department Appellate Division was reversed by the Court of Appeals on the grounds that the payee was not a holder in due course.

An earlier case also particularly relevant is *Mattewan Mfg. Co. v Chemical Bank & Trust Co.* (244 App Div 404, 414 [1st Dept 1935]). There the court stated: "The situation presented in the case then after analysis is a very simple one in which a bank having come into possession of funds and having received no proper instructions as to their disposition, gives the

money to a depositor not entitled thereto. This is a plain though innocent conversion for which the bank is obviously liable and we think that the bank is equally liable to the plaintiff on both checks and that judgment should be directed accordingly." *(See also, Sims v United States Trust Co.,* 103 NY 472.)

Similarly in *Fidelity & Cas. Co. v Hellenic Bank Trust Co.* (181 Misc 40), the court held it to be the duty of a payee bank to ascertain why a depositor-maker had issued checks to the order of the bank, to which the depositor was not indebted. The checks there as in the instant case having been fraudulently issued by an employee of the drawer.

One could fairly conclude on the cases cited that the plaintiff as a defrauded maker should recover summarily from the defendant, payee. Until the decision of *Federal Ins. Co. v Groveland State Bank* (37 NY2d 252 [1975]) this appeared to be the status of the law in this State. However, in the *Federal Ins. Co.* case the Court of Appeals again speaking through Judge Gabrielli held that while a payee did have a duty to inquire of the depositor-maker before making payment to a fraudulent employee, such negligence on the part of the payee was not sufficient to permit the depositor-maker a full recovery. The Court of Appeals said:

"Relying on * * * *Sims v United States Trust Co.* (103 NY 472, 475-476) [and other cited cases] * * * the Appellate Division [Fourth Department] held that defendant's [payee's] failure to inquire of Lincoln [depositor-drawer] as to the disposition of the proceeds of the checks entitled plaintiff [subrogee of drawer] to recover in an action for money had and received. It was further held that even if Lincoln [drawer] violated some duty of supervision of its employees, checks and funds owed to Groveland [payee] * * * the loss * * * was occasioned by the superseding act of Groveland [payee] in paying out Lincoln's [drawer's] funds. * * *

"Directing our attention first to the rationale of the decision below, we think the Appellate Division correctly decided that defendant [payee] violated a duty owed to Lincoln [maker] by disbursing its money without making any inquiry of the depositor as to his actual or apparent authority to act for Lincoln [maker]. *However, we cannot agree that the negligence of the defendant [payee] intervened so as to nonetheless permit plaintiff [subrogee of maker] full recovery against it [payee]."* (37 NY2d, *supra,* at 257-258.)

The restriction on permitting full recovery in *Federal Ins.*

*(supra)* is not to be confused with apportionment of fault which has been held not to be applicable to negotiable instruments. *(Five Towns Coll. v Citibank,* 108 AD2d 420 [2d Dept 1985], *supra;* Gallub, *Assessing Culpability in the Law of Torts: A Call For Judicial Scrutiny in Comparing "Culpable Conduct" Under New York's CPLR 1411,* 37 Syracuse L Rev 1079, 1128.)

The court continued in *Federal Ins. v Groveland Bank (supra)* by holding that the drawer bank had an obligation to examine its monthly statements and if it failed to do such negligence on the part of the drawer would bar recovery. The court concluded this aspect of the case by stating: "We conclude, therefore, that since the burden is on plaintiff [subrogee of maker] to prove that defendant [payee] cannot in good conscience retain the moneys, and *since reasonable and prudent action by Lincoln [maker] would have revealed the defalcations and prevented further losses, plaintiff [subrogee of maker] should be precluded from recovery by way of summary judgment."* (37 NY2d, *supra,* at 259; italics added.)

In the case at bar there is no sufficient proof that the defendant, payee, cannot in good conscience retain the money from the *three checks* and since there is not sufficient proof that reasonable and prudent conduct by the plaintiff maker, would have or have not revealed the defalcations and prevented further losses, summary judgment for plaintiff maker, is denied as to these three checks. For the same reason summary judgment for the defendant payee is denied.

In reviewing the conduct of the parties to the lawsuit as to the 10 checks in issue one thing repeats itself over and over and persists to this writing. It is that in every instance the defendant was the named payee. Yet in every instance the defendant never once treated the checks or the proceeds as its property. In every instance it accepted the oral statement of the forger, Sharon Nolan, that the proceeds of the checks were hers and without more the defendant payee credited the proceeds of each check to Sharon Nolan's accounts. In charity we will withhold characterizing such conduct as "abject stupidity" and call it merely negligence of the grossest kind. Even if we view the defendant payee as an innocent victim of fraud, it has been well stated by our Court of Appeals that "as between two innocent victims of a fraud, 'the one who made possible the fraud on the other' should bear the loss." *(See, Hall v Bank of Blasdell,* 306 NY 336, 345.) That person in the

case at bar was the defendant, Olean Dresser Clark Federal Credit Union.

In summary, defendant is denied and plaintiff is granted (1) partial summary judgment on the six checks bearing Nos. 1540, 1526, 1474, 1376, 1407, 1418 and each bearing a restrictive endorsement; (2) partial summary judgment on the one check No. 1273 bearing the endorsement "Sharon Nolan" and plaintiff and defendant are each denied partial summary judgment on the checks Nos. 1468, 1615 and 1236 each containing no endorsement.