*345 OPINION OF THE COURT
Herbert Kramer, J.
In this action for conversion, money had and received, and negligence, defendant Home Savings of America, The Bowery Division FSB (formally known as and sued herein as The Bowery Savings Bank, and hereinafter referred to as the Bowery) moves for summary judgment dismissing plaintiffs’ complaint. Plaintiffs cross-move for summary judgment in their favor in the amount of $349,952.29, plus interest from June 30, 1987.
The background of this matter is as follows: Plaintiff Sunset Park Redevelopment Committee, Inc. (SPRC) is a not-for-profit corporation engaged in providing and improving housing in the Sunset Park area in Brooklyn, New York. Plaintiffs Sunset Park Realty Management Corp. and Sunset Park Contracting Corp. are wholly owned subsidiaries of SPRC. Eugene Grevenberg was the executive vice-president of plaintiffs and was one of the two signatories that were required to sign checks on plaintiffs’ bank accounts. These accounts were kept in local Sunset Park area branch banking offices. Grevenberg also had the authority to transfer money between SPRC accounts and from SPRC accounts to the subsidiaries’ accounts. Grevenberg did not, however, have the authority to open bank accounts. That authority was given only by express resolutions adopted by plaintiffs’ Board of Directors.
On June 5, 1987, Grevenberg opened two commercial corporate accounts at the Bowery in the names of Sunset Park Realty Management Corp. and Sunset Park Contracting Corp. He did this by using corporate resolutions created by him, which falsely indicated that he was plaintiffs’ president and that fictitious persons were plaintiffs’ other corporate officers. Grevenberg falsely supplied his home address and home telephone number as plaintiffs’ address and telephone number. The Bowery did not obtain a bank reference for these commercial accounts because Grevenberg already had personal accounts with it. Although Grevenberg had previously accurately listed himself on his personal account records as plaintiffs’ "cost accountant” employed at plaintiffs’ actual Brooklyn address, this was apparently not discovered by the Bowery. The Bowery mailed bank statements to Grevenberg’s home rather than to plaintiff’s business address. No one from the Bowery spoke to or communicated with anyone at SPRC, Sunset Park Realty Management Corp., or Sunset Park Con *346 tracting Corp. other than Grevenberg in order to confirm his authority to open these accounts.
Grevenberg had made small cash deposits of $200 and $500 to open the fraudulent accounts. He then made a series of deposits into the Bowery accounts with Citibank cashier’s checks purchased with money he withdrew from SPEC accounts at Citibank, and checks he drew on SPEC accounts maintained at Manufacturers Hanover Trust Company, upon which he was an authorized signatory. Specifically, at the end of June 1987, he deposited $200,000 into the Sunset Park Contracting Corp. account via a Citibank cashier’s check, and deposited five Citibank cashier’s checks totalling $97,658.65 into the Sunset Park Eealty Management Corp. account. He also deposited another Citibank cashier’s check into the Sunset Park Contracting Corp. account in the amount of $8,000. In early July, Grevenberg deposited checks for $20,000 and $25,000 drawn on SPEC accounts at Manufacturers Hanover Trust Company into the Sunset Park Eealty Management Corp. and Sunset Park Contracting Corp. accounts, respectively. All of these checks were made payable to plaintiffs, as corporate payees, and were restrictively endorsed "for deposit only” to plaintiffs’ accounts.
Grevenberg then withdrew 12 checks in the amount of $16,000 each and one check in the amount of $3,500 from the Sunset Park Contracting Corp. account. He also withdrew $96,000 from the Sunset Park Eealty Management Corp. account, via six checks, each in the amount of $16,000 made payable to cash.
Shortly thereafter, Grevenberg deposited $109,200 into the Sunset Park Eealty Management Corp. account, and then another $57,600 into that account. He also deposited $44,200 into the Sunset Park Contracting Corp. account.
On or about July 28, 1987, Grevenberg contacted the Lexington Avenue branch of the Bowery about withdrawing $280,000 in cash from the Sunset Park Contracting Corp. and Sunset Park Eealty Management Corp. accounts. He claimed that he needed the cash in order to "meet his payroll.” The Bowery’s security department assigned a bank security officer, David Frisher, to examine the validity of the deposits into the Sunset Park Contracting Corp. and Sunset Park Eealty Management Corp. accounts. To examine such validity, Mr. Frisher did not go to Grevenberg’s home address in St. Al-bans, New York, where the bank statements were being sent *347 but, instead, visited plaintiffs’ actual premises in Sunset Park, Brooklyn. While he was there, however, he only spoke to Grevenberg in order to confirm that he was the president of plaintiffs with the authority to open these accounts. Mr. Frisher made sure that Grevenberg was the "real” Grevenberg, and contacted Citibank to confirm that there were funds available to pay the Citibank cashier’s checks. The Bowery permitted Grevenberg to make the withdrawal on August 6, 1987.
On August 7, 1987, Grevenberg did not return from his scheduled vacation and could not be reached at home. Plaintiffs’ president, Jack Barouh, upon reviewing plaintiffs’ August 1987 bank statements from Citibank and Manufacturers Hanover Trust Company accounts, discovered the existence of the fraudulent bank accounts at the Bowery. Subsequently, SPEC instituted a civil action against Grevenberg and, on December 16, 1988, a judgment for $525,593.44 was entered against him. Grevenberg was also convicted on charges of, inter alla, grand larceny.
Plaintiffs brought the instant action against the Bowery, asserting claims of, inter alia> negligence and conversion, and seeking recovery of $349,952.29 plus interest. The Bowery now moves for summary judgment dismissing plaintiffs’ complaint against it on the ground that UCC 3-405 (1) (b) or (c) shields it from all liability.
Plaintiffs, in opposition, argue that the Bowery’s motion should be denied because it did not plead the applicability of UCC 3-405 as an affirmative defense in its answer. "Ordinarily, a defendant’s motion for summary judgment must be denied where it is predicated on a ground not pleaded as a defense in the answer” (Contelmo’s Sand & Gravel v J & J Milano, Inc., 96 AD2d 1090). However, "a court may grant summary judgment based upon an unpleaded defense where reliance upon that defense neither surprises nor prejudices the plaintiff” (Olean Urban Renewal Agency v Herman, 101 AD2d 712, 713; see also, ATN Marts v Ireland, 195 AD2d 959, 960; Memorial Hosp. v Baumann, 100 AD2d 701; Pantel v Becker, 89 Misc 2d 239, 241).
Here, in view of the allegations in the complaint, the detailed discovery that has taken place in the action, the fact that the parties have had an adequate opportunity to brief the legal issues involved, and the awareness of plaintiffs at all times of the alleged facts underlying this proposed defense, *348 they would not be prejudiced by such a defense, if applicable. As discussed below, however, the court finds that UCC 3-405 does not provide a defense to plaintiffs’ action herein and that, therefore, summary judgment based on UCC 3-405 as a defense cannot be granted.
UCC 3-405 (1) (b) and (c) provide:
"(1) An indorsement by any person in the name of a named payee is effective if * * *
"(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or
"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.”
The Bowery argues that UCC 3-405 (1) (b) or (c) is applicable to the facts at bar, thereby absolving it from any liability. Specifically, it asserts that pursuant to UCC 3-405 (1) (b), Grevenberg’s endorsement of the checks in the names of Sunset Park Realty Management Corp. and Sunset Park Contracting Corp. as payees was effective because Grevenberg signed on behalf of them in their capacity as makers or drawers intending them, as payees, to have no interest in the checks. It alternatively asserts that pursuant to UCC 3-405 (1) (c), the endorsements by Grevenberg in the names of Sunset Park Realty Management Corp. and Sunset Park Contracting Corp. was effective since Grevenberg, as an agent or employee of Sunset Park Realty Management Corp. and Sunset Park Contracting Corp., the makers or drawers, supplied them with their own names as payees intending them to have no such interest.
The facts of this case do not fit comfortably within either UCC 3-405 (1) (b) or (c). Such facts differ from the usual situation where these paragraphs have been held to be applicable (see, e.g., Prudential-Bache Sec. v Citibank, 73 NY2d 263, 271; Olean Area Camp Fire Council v Olean Dresser Clark Fed. Credit Union, 142 Misc 2d 1049, 1056; UCC 3-405, Comments 3, 4). Here, the payees were not third parties, but were the makers or drawers themselves on whose behalf Grevenberg signed the checks. Additionally, Grevenberg, as an employee of plaintiffs, did not supply plaintiffs with the name of a third person intending him or her to have no such interest; the name supplied was the makers’ or drawers’ own names.
Furthermore, the checks were respectively endorsed "for deposit only” to plaintiffs’ accounts, but were not deposited to *349 bona fide accounts of plaintiffs. In Underpinning & Found. Constructors v Chase Manhattan Bank (46 NY2d 459), the Court of Appeals held that UCC 3-405 did not preclude a party from maintaining an action against depositary banks for conversion and money had and received where the banks had paid out funds in violation of a restrictive endorsement. More recently, in Prudential-Bache Sec. v Citibank (supra), the Court of Appeals reaffirmed this principle. Although ruling that UCC 3-405 (1) (c) was a defense in that case, it distinguished the facts of that case from those of Underpinning since in Underpinning the banks had paid out funds in violation of a restrictive endorsement (supra, at 272).
In the case at bar, the checks at issue were not deposited in full compliance with the restrictive endorsements because they were not deposited to genuine accounts of plaintiffs. UCC 3-405 thus does not provide a defense to the action herein since the failure to deposit checks only in the accounts of the restrictive endorsers serves as an independent basis for liability (see, Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, 447-448; Underpinning & Found. Constructors v Chase Manhattan Bank, supra, at 469).
Moreover, the court notes, in passing, that the practical policy considerations that motivated UCC 3-405 (1) (b) and (c) are not evident in the facts of this case. The fraud herein, unlike in Prudential-Bache Sec. (supra), was only in progress for a short length of time (from June 5 to Aug. 6, 1987). Furthermore, this is not a case, as in Prudential-Bache Sec. (supra), where the drawer issued checks naming as payees third-party entities to which it had no indebtedness, and where the checks were deposited in full compliance with the drawer’s instructions. Plaintiffs also do not allege that their loss was caused merely by Grevenberg’s endorsement and deposit of the checks. Rather, plaintiffs assert that the unauthorized opening of the bogus accounts created the vehicle for the defalcation since, due to the restrictive endorsements placed on the checks, Grevenberg needed accounts in the names of Sunset Park Realty Management Corp. and Sunset Park Contracting Corp. in order to accomplish such defalcation.
While the court finds that neither UCC 3-405 (1) (b) nor (c) provides the Bowery with a defense to plaintiffs’ action, it does not find that the Bowery is liable to plaintiffs as a matter of law. Triable issues of fact exist including, inter alla, the use of reasonable care by plaintiffs, whether the Bowery failed to *350 make inquiries required by reasonable commercial practice, and whether the Bowery, in opening the accounts, was negligent in failing to act in accordance with its own established procedures as set forth in its Standard Practice Manual. Such triable issues preclude the granting of summary judgment in plaintiffs’ favor (see, Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439, 441; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404).
Accordingly, defendant’s motion and plaintiffs’ cross motion are hereby denied.