**Victor Hugo O'Farrill AVILA, Plaintiff,**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and Banco International SNC, Defendants.**

**No. 91 Civ. 5004 (MGC).**

United States District Court,
S.D. New York.

July 1, 1993.

Mandelbaum, Schweiger & Conner, New York City, for plaintiff by Sandor C. Schweiger and Mary Mihalakos.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendants by Cynthia Colt, Leo T. Crowley and Thomas F. Clauss, Jr.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff Victor Hugo O'Farrill Avila, the drawer of a check against his account at defendant Bank of America National Trust and Savings Association, ("BOA") sues BOA, the drawee bank, for paying on the check which bore a forged endorsement (the "check"). Plaintiff also asserts claims against Banco Internacional SNC, ("Banco"), the depositary bank, for presenting the check to BOA for collection, collecting the proceeds, and converting plaintiff's funds. Plaintiff seeks recovery from both defendants of the face value of the check, $260,000, and consequential damages from Banco in the amount of $340,000 [1]. In open court, I granted Banco's motion for summary judgment with respect to the claim against it for consequential damages. (Tr. at 38–39.)

Plaintiff moves for summary judgment against BOA for the face amount of the check. Banco moves for summary judgment on plaintiff's claim against it for the face amount of the check.

For the reasons discussed below, plaintiff's motion for summary judgment is denied, and Banco's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Avila, a native of Mexico and, until recently a vice-president of Televisa S.A., a broadcasting company, deals in horses as a hobby. On April 21, 1990, plaintiff drew a check in the amount of $260,000 against his account at

BOA for the purchase of two horses. The seller and payee of the check was Patrick Ronge, a resident of Belgium. Plaintiff gave the check to Alberto Guasch, an associate who had negotiated the purchase, and asked Guasch to deliver the check to Ronge in Belgium. (Pl's 3–G Stmt., Ex. 3, Avila Dep. p. 22.) Because Guasch was unable to make the trip, he returned the check to Avila's secretary, Tania McKelligan. (Id.) On April 24, 1990, McKelligan gave the check to Jose Cedillo, an accounts manager at Televisa. Cedillo delivered the check to Dinamica Cambiaria Casa de Cambio ("Dinamica"), an exchange house located in Mexico City, for the purpose of transferring funds in the amount of $260,000 to Ronge's account in Geneva, Switzerland. Plaintiff claims that the receipt given by Dinamica to Cedillo specified that the check itself would be delivered to Ronge. (Id. at ¶ 9.) However, the translated version of the receipt which plaintiff has submitted is ambiguous on this point. (Id. at Ex. 4.)

Plaintiff alleges that an officer of Dinamica, Alfonso Rocha Aldana ("Rocha"), forged Ronge's signature, stamped the check with Dinamica's standard stamp of endorsement, "for Deposit Only A/C No. 5002–4531–1–1 Dinamica Cambiaria," and then deposited the check into Dinamica's account at Banco. (Id. at ¶ 10.)

In compliance with the restrictive endorsement, Banco accepted the check for deposit into Dinamica's account. (Def's 3–G stmt ¶ 6.) Banco processed the check through the Federal Reserve Clearing House System. (Id. at ¶ 7.) On approximately April 26, 1990, BOA received the check through the Federal Reserve System. (Id. at ¶ 9.) Because the check appeared to contain the required endorsements, BOA approved the check for payment. BOA debited plaintiff's account in the amount of $260,000, and transmitted funds in this amount through the Federal Reserve wire into Dinamica's account with Banco in New York City. (Id. at ¶ 10.)

While the subsequent events are unclear, it is undisputed that the funds were never

---

1. Plaintiff has withdrawn his claim against BOA for consequential damages. (Tr. at 2–3.)

transferred to Ronge. Dinamica sent Banco two transfer orders, one on May 3, 1990 requesting that Banco transfer $100,000 to Ronge, and the other on May 4, 1990 requesting a transfer to Ronge in the amount of $160,000. In a letter dated September 20, 1990 to Dinamica's General Manager, Banco stated that when it tested the transfer orders, "it was found that although such instructions had been received, at no time were they carried out" since Dinamica's account had insufficient funds. (Pl's Opp. 3–G Stmt, Ex. 16.) Because Ronge called several times to report that he had not yet received the funds, McKelligan checked with Rocha, and was repeatedly told that the funds were en route to Ronge's bank. (McKelligan Aff. at ¶ 6.) On May 4, 1990, after learning that Ronge still had not received the funds, McKelligan contacted Dinamica's account officer at Banco, Yves Pierre–Pierre. Plaintiff alleges that Pierre–Pierre told McKelligan that $100,000 had been transferred to Ronge's bank, but that the remainder of the funds had been withdrawn from the account. Later that day, McKelligan sent a fax to Pierre–Pierre which informed him that Ronge had not received the funds and gave an alternative bank to which he could wire the funds. (Pl's 3–G Stmt., Ex. 8.) At this point, Dinamica's account balance was approximately $100,000. (Pl's 3–G Stmt, Ex. 10.) Because Dinamica's account subsequently was depleted, no funds were ever transferred to Ronge.

Plaintiff initiated an action in Mexico against Cedillo and various Dinamica officers. It is undisputed that plaintiff subsequently authorized the court to pardon Cedillo, and all proceedings against Cedillo were dismissed. (Def's Opp. 3–G Stmt, Ex. K.) No information has been submitted by either party on the outcome of the investigation with respect to the officers of Dinamica.

Defendants contend, and plaintiff does not dispute, that California law governs plaintiff's claims against BOA and New York law governs plaintiff's claims against Banco.

### DISCUSSION

#### 1. *Plaintiff's Motion*

Plaintiff argues that BOA is liable for the face amount of the check because it made payment on a check containing an unauthorized (forged) endorsement. An unauthorized signature is one made without actual, implied or apparent authority, including a forgery. Cal.Unif.Comm.Code § 1201, subd. 43. Section 4401(1) of the Code permits banks to charge against a depositor's account "any item which is otherwise properly payable from that account." Plaintiff argues that a check with a forged endorsement is not properly payable, *See Campbell v. Bank of America*, 190 Cal.App.3d 1420, 235 Cal. Rptr. 906, 911 (5th Dist.1987) (quoting *Joffe v. United California Bank*, 141 Cal.App.3d 541, 554–55, 190 Cal.Rptr. 443 (2d Dist. 1983)), and therefore BOA improperly charged its account.

BOA points to the fact that plaintiff delivered to Dinamica a check payable to Ronge and instructed Dinamica to transfer the funds to Ronge. BOA argues that this transaction could not have been accomplished unless Ronge's endorsement were forged, and that because plaintiff authorized the transaction, the check was properly payable. In effect BOA is arguing that plaintiff should be held responsible for the loss resulting from the forgery because plaintiff authorized the transaction which caused the forgery.

Where the drawee bank and the drawer are equally innocent parties, the drawee bank is held liable for paying a check containing a forged endorsement. *See Fireman's Fund Insurance Co. v. Security Pacific Nat'l Bank*, 85 Cal.App.3d 797, 149 Cal. Rptr. 883, 888, n. 4 (2d Dist.1978) (citations omitted). However, if plaintiff regularly used Dinamica to transfer funds to third parties and these transfers were accomplished by delivering to Dinamica checks payable to third parties whose endorsements were forged, then a factual issue exists as to whether plaintiff and BOA are equally innocent parties, and if not whether in this case it is appropriate to allocate the loss resulting from the forgery to plaintiff. *See* Calif.Unif.Comm.Code § 3406 (Any person whose negligence substantially contributes to the making of an unauthorized signature is precluded from asserting lack of authority

against a drawee who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's business.)

BOA has proffered evidence that plaintiff, both in the past and in this instance, transferred funds by delivering to Dinamica checks payable to third parties. In a statement made in connection with the action plaintiff filed in Mexico, Cedillo asserted that in the 2½ years he worked for plaintiff, he had delivered approximately 30 such checks to Dinamica. (Def's Opp. 3–G Stmt, Ex. D.) Moreover, BOA has submitted copies of three checks drawn on plaintiff's account payable to third parties in California, each of which bears the stamped endorsement of Dinamica below the apparent signature of the payee. (Def's Supp. Mem, Ex. E.) BOA has also submitted transfer orders received by Banco from Dinamica requesting that the proceeds of the checks be transferred to the payees. (*Id.* at Ex F.)

Plaintiff argues that it was without his knowledge or consent that the check payable to Ronge was delivered to Dinamica. However, in his deposition, plaintiff stated that his secretary, Tania McKelligan, "a person that [he] trust[s] very much ... [who] takes care of how to send the money" gave the check to Cedillo for delivery to Dinamica. (*Id.* at Ex. A., pp. 33–36.) A factual issue exists as to whether McKelligan had actual authority to deliver the check to Dinamica. *See In re Nelson,* 761 F.2d 1320, 1322 (9th Cir.1985). (Under California law, actual authority is that which a principal intentionally confers upon an agent, or allows the agent to believe he possesses.) Foreseeability to McKelligan that Ronge's endorsement would be forged may be imputed to plaintiff. *See* Restatement (Second) of Agency § 272.

Finally, BOA has proffered sufficient evidence to raise a factual issue as to whether it was Dinamica's practice to forge the payee's signature. BOA has submitted proof that the payee's signature was required in order to effectuate these transfers. In their depositions, both Edwin Hernandez, an employee of Banco, and Gisela Beaton, a BOA employee, stated that in order for their respective banks to process or pay a check, the check had to be endorsed by the payee. (Def's Supp. Mem, Ex. B, p. 23, p. 74; Ex. C. pp. 39–40.) BOA's internal regulations provide that all items presented for deposit or cash must be endorsed by the original payee. (Pl's 3–G Stmt, Ex. 14, pp. 2–3.)

Plaintiff advances a theory of how Dinamica could have transferred funds to Ronge without forging Ronge's signature. Plaintiff speculates that Dinamica might have accepted the check and instructed Banco to transfer funds from its account to Ronge. Under plaintiff's theory, Dinamica then would transmit the check to Ronge's bank in Belgium with the request that it procure Ronge's signature and return the check to Dinamica. Upon receipt of the properly endorsed check, Dinamica would deposit it in its account at Banco.

Plaintiff's theory does not comport with the evidence submitted that Dinamica effectuated transfers by first depositing checks in its account at Banco, and then having Banco wire funds to the payees. (Def's Opp. 3–G Stmt, Ex. D, Cedillo Stmt.) Furthermore, as discussed above, BOA has submitted copies of three checks payable to third parties in California, each of which bear the stamped endorsement of Dinamica and the apparent signature of the payee, and transfer orders relating to the checks. (Def's Supp. Mem., Ex. E, F.) The transfer orders for two of the checks are dated December 14, 1989, and the third is dated December 20, 1989. (*Id.,* Ex. F.) The first two checks were paid by BOA on December 15, 1989, and the third was paid on December 21, 1989. (*Id.,* Ex. E.) These dates cast doubt on plaintiff's theory that it was Dinamica's practice to obtain the payee's signature before depositing the check into its account at Banco.

Summary judgment is appropriate only where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All doubts must be resolved against the moving party, and all inferences must be drawn in favor of the party against whom summary judgment is sought. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). BOA has prof-

fered sufficient evidence to defeat plaintiff's motion. Therefore, plaintiff's motion for summary judgment is denied.

### 2. *Banco's Motion*

Plaintiff seeks to hold Banco, the depositary bank, liable for the face amount of the check. Banco moves for summary judgment dismissing this claim against it on the ground that under these circumstances, New York law does not permit a drawer to assert a claim against a depositary bank.

■ In New York, a drawer generally has no direct action against a depositary bank, but rather must seek recovery from the drawee bank. *Prudential–Bache Sec. v. Citibank,* 73 N.Y.2d 263, 539 N.Y.S.2d 699, 536 N.E.2d 1118 (1989).

■ The reason for the rule is that in the typical forged endorsement case, the endorsement will be ineffective and therefore the check will not authorize the drawee bank to pay it from the drawer's account. Without this authority, the drawee may not charge the drawer's account. *Underpinning and Foundation Constructors, Inc. v. Chase Manhattan Bank,* 46 N.Y.2d 459, 464, 414 N.Y.S.2d 298, 300, 386 N.E.2d 1319, 1321 (1979). Where the drawee makes an unauthorized payment, the payment is deemed to have been made solely from the drawee's property. *Id.* Thus, the drawer has no claim against the depositary bank for honoring a forged endorsement because the depositary bank is deemed not to have dealt with the drawer's property.

In *Underpinning,* the court recognized that the rationale for refusing to allow a drawer to sue a depositary bank on a forged endorsement is inapplicable in a case in which the endorsement, though forged, is deemed effective. In such a case, the drawee is paying out funds in which the drawer is deemed to have an interest. In *Underpinning,* the court determined that a forged endorsement was effective under section 3–405 (subd. [1], par. [c] ) of the N.Y.Unif. Comm.Code, and that the drawee had properly honored the check. The court held that a drawer could sue depositary banks which honored checks in violation of restrictive en-

dorsements. *Id.* at 468, 414 N.Y.S.2d at 302, 386 N.E.2d at 1322. Each check contained a restrictive endorsement such as "for deposit only" which requires that the check be deposited in the named endorser's account. Instead, the checks were cashed or deposited in savings accounts held by individuals other than the named endorsers. The court reasoned that the liability rules in forged endorsement cases are based on the view that liability should be imposed on the party which could have prevented the fraud most easily. A check presented in violation of a restrictive endorsement is "an obvious warning sign." Since the depositary bank could prevent the fraud by investigating the situation, the court considered it appropriate to impose liability on the depositary bank. *Id.* at 469, 414 N.Y.S.2d at 303, 386 N.E.2d at 1324.

■ Another situation in which a drawer has an actionable claim against a depositary bank is where the bank is a knowing participant in a fraudulent scheme. *Prudential–Bache,* 73 N.Y.2d 263, 539 N.Y.S.2d 699, 536 N.E.2d 1118.

■ Plaintiff concedes that in New York a drawer generally does not have a claim against a depositary bank which pays on a check with a forged endorsement. Plaintiff does not allege that Banco paid on the check in violation of a restrictive endorsement or that Banco knowingly participated in a scheme to defraud him. But plaintiff argues that in the event BOA is deemed to have properly honored the check, Banco should be held liable for the face amount of the check because Banco acted in a commercially unreasonable manner by failing to execute transfer orders made by Dinamica, its customer, and thereby passed up the opportunity to prevent the loss resulting from the forgery. Moreover, plaintiff argues, Banco's representation that one of the transfers had been made lulled him into not investigating further. Plaintiff seeks to analogize Banco's failure to execute transfer orders to a depositary bank's payment on a check in violation of a restrictive endorsement.

Banco argues that it cannot be held liable to plaintiff because Dinamica's transfer or-

ders created no duty to plaintiff. However, because a depositary bank is deemed to be handling the drawer's funds, a depositary bank may be liable to a drawer for paying on a check in violation of a restrictive endorsement, even though the restrictive endorsement, an instruction given by the *payee*, creates no duty in favor of the drawer.

■ There is a compelling reason for not holding Banco liable to plaintiff for a portion of the face amount of the check. On May 3, 1990, the date Banco received the first transfer order, Dinamica's account balance was approximately $100,000. (Pl's 3–G Stmt., Ex. 10.) Banco cannot be held liable for failing to transfer funds which were not in Dinamica's account when Banco received the transfer order. However, plaintiff has raised a factual question about the propriety of Banco's release of the funds from Dinamica's account after it was put on notice of an irregularity.

■ A depositary bank which pays on a check in violation of a restrictive endorsement is held liable to the drawer for loss caused by forgery because a check presented in violation of a restrictive endorsement puts the bank on notice of an irregularity. In *Prudential–Bache*, the court emphasized that the exception set forth in *Underpinning* was a narrow one, that paying out funds in violation of a restrictive endorsement is "a gross violation of banking practice" and that "it was only the restrictive endorsement that shifted liability to the depositary banks, because it placed the banks in a better position to avoid the loss caused by the forgery." *Prudential–Bache*, 73 N.Y.2d at 272, 539 N.Y.S.2d at 704, 536 N.E.2d at 1123 (citations omitted).

■ A transfer order generally provides no notice of irregularity, and plaintiff has proffered no evidence that Dinamica's transfer orders should have alerted Banco that the transfer was necessary to prevent a loss resulting from a forgery. While a bank which does not execute a transfer order may be held liable to its customer for resulting foreseeable injury, just as if it had wrongly dishonored a check, its failure to execute the transfer order provides no basis for holding the bank liable to the drawer for an injury which it could not have foreseen. *Walker v. Texas Commerce Bank*, 635 F.Supp. 678 (S.D.Tex.1986), cited by plaintiff, does not suggest otherwise. There, the court held that a bank which wired funds in excess of the amount its customer requested could be held liable to *its customer* for the excess funds transferred.

While there is no evidence that Dinamica's transfer orders alerted Banco to an irregularity, there is evidence that plaintiff's secretary later notified Banco that the check had been wrongfully deposited into Dinamica's account. (McKelligan Aff., ¶ 9.) Plaintiff's secretary contacted Banco on May 4, 1990; Dinamica's account balance at the beginning of business on this date was $107,790.55. (Pl's 3–G Stmt., Ex. 10.) There is no evidence that Banco questioned Dinamica about the check, or took any steps to investigate the matter.

Plaintiff has raised a factual question with respect to the $107,790.55 which Banco released from Dinamica's account after it was put on notice of an irregularity. However, plaintiff has failed to raise a factual question with respect to the funds which had been released from the account before Banco received Dinamica's transfer orders.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Banco's motion for summary judgment is granted with respect to the $152,209.45 which had been released from Dinamica's account before Banco received Dinamica's transfer orders. Banco's motion is denied with respect to the $107,790.55 in Dinamica's account on the date Banco was alerted to an irregularity.

SO ORDERED.