**FEDERAL INSURANCE COMPANY and Great American Insurance Company, as Assignees of Keyfood Stores, Co–Operative, Inc., Plaintiffs,**

v.

**CHARLES SCHWAB & CO., INC., Defendant.**

**No. 97 Civ. 2620(WK).**

United States District Court, S.D. New York.

Dec. 16, 1997.

Ann LaCarrubba, Rosner & Nocera, New York City, for Plaintiff.

Kenneth R. Puhala, Layton Brooks & Hecht, New York City, for Defendant.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiffs Federal Insurance Company and Great American Insurance Company, as Assignees of Keyfood Stores Cooperative, Inc. (hereinafter collectively "plaintiffs" and/or "Keyfood"), have brought an action against defendant Charles Schwab & Company, Inc. ("defendant" and/or "Charles Schwab") for accepting and depositing two checks with the unauthorized and/or fraudulent signature of Keyfood. Defendant has made a motion to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that under New York common-law and New York's version of the Uniform Commercial Code ("U.C.C.") Keyfood cannot state a claim against it.[1] For the reasons that follow, defendant's motion to dismiss is granted.

## BACKGROUND

The instant action arises from the theft by an unknown individual (or individuals) of two checks from Keyfood Stores Cooperative ("Keyfood"). Using a facsimile stamp signature of Keyfood, this individual (or individuals) fraudulently signed these stolen checks and used them to open up two brokerage accounts with defendant Charles Schwab.

The first check, in the amount of $253,084.98, was made payable to a company known as Kazman Imports and Exports, Inc. ("Kazman"), a non-party in this action, and deposited in a brokerage account defendant opened in the name of Kazman. The second check, in the amount of $60,000, was made payable to defendant Charles Schwab, but used to open an account in the name of an unidentified third-party. Both checks were drawn on Keyfood's account at Chase Manhattan Bank ("Chase"). At no time did defendant inquire from Keyfood—the drawer—as to whether or not either check was authorized. With respect to the first check, however, at oral argument it was revealed that an employee of defendant did contact Chase before opening the brokerage account on behalf of Kazman.

---

1. After defendant made its motion to dismiss, Keyfood cross-moved to amend the Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure in order to allege that defendant acted in bad faith when it deposited the checks, and to indicate that defendant was named as the payee on one of the checks. Defendant does not oppose this motion to amend for purposes of deciding the motion to dismiss, contending that even as amended the Complaint fails to state any actionable claims. Because defendant has no objections, we base the following discussion on the amended complaint.

Upon learning of the loss/theft of the two checks, Keyfood immediately notified its bank Chase—the drawee—and requested a "Stop Payment" order. However, Chase informed Keyfood that both checks had already been paid. Keyfood then made a demand upon defendant that it reimburse it for the loss of the full amount of the two checks on the ground that such loss was due to defendant's negligence and commercial bad faith in depositing the checks under suspicious circumstances. Defendant refused this demand. Keyfood then brought the instant action.

### DISCUSSION

In the Complaint, Keyfood asserts claims of conversion, money had and received and commercial bad faith based on defendant Charles Schwab's acceptance and deposit of the two checks. As above noted, defendant has made a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims. For purposes of deciding this motion we accept as true the facts alleged in the Complaint. *See, e.g., Jackson National Life Ins. Co. v. Merrill Lynch & Co.* (2d Cir.1994) 32 F.3d 697, 699.

■ Defendant argues that plaintiffs may not bring any claims against it arising from its acceptance and deposit of the two fraudulently signed checks because, under New York common-law, "a drawer generally has no direct action against a depository bank, but rather must seek recovery from the drawee bank." *See, e.g., Avila v. Bank of America National Trust & Sav. Assn.* (S.D.N.Y.1993) 826 F.Supp. 92, 97. Moreover, under New York's version of the U.C.C. there are "added defenses that make it even more difficult for a drawer to recover against a depository bank." *See, e.g., Prudential–Bache Securities, Inc. v. Citibank, N.A.* (1989) 73 N.Y.2d 263, 272, 539 N.Y.S.2d 699, 703–04, 536 N.E.2d 1118.

This principle is based on the rule that (*Prudential–Bache Securities*, 73 N.Y.2d at 269, 539 N.Y.S.2d at 702, 536 N.E.2d 1118): [o]rdinarily, an unauthorized indorsement—that is, either a forged indorsement or one made by an agent exceeding authority (U.C.C. 1–201[43])—is ineffective to pass title or authorize the drawee bank to pay. The check is not properly payable because an unauthorized signature is inoperative as that of the person whose name is signed. (U.C.C. 3–404, other citations omitted)

"Consequently, the drawee bank generally may not debit the drawer's account when it pays such a check." Thus, "the drawer has no claim against the depository bank for honoring a forged [signature] because the depositary bank is deemed not to have dealt with the drawer's property." *See, e.g.,Avila,* 826 F.Supp. at 97.

Accordingly, Keyfood would only be able to bring an action against Charles Schwab if the funds used to honor the checks belonged to it and not the drawee Chase. However, the fraudulent signatures on the checks rendered them ineffective as defined by U.C.C. 3–404. Thus, because Chase was not authorized to pay them from Keyfood's account, Charles Schwab did not deal with Keyfood's property.

Keyfood does not dispute the accuracy of the principle as above stated, but asserts that it is inapplicable to the instant action because defendant: (1) is not a depository bank; (2) acted with commercial bad faith; and/or (3) was named as the payee on one of the checks.

■ As an initial matter, the recent decision in *Getty Petroleum Corp. v. American Express Travel Related Services Co., Inc.* (1997) 90 N.Y.2d 322, 328, 660 N.Y.S.2d 689, 693, 683 N.E.2d 311, conclusively establishes that Charles Schwab, a brokerage company not engaged in traditional banking, may avail itself of the protection of the U.C.C.'s check-fraud provisions because they were not enacted to protect only banks, but were

> intended to protect all holders of negotiable instruments.... The Code defines a 'holder' as 'a person who is in possession of ... an instrument ... indorsed ... in blank' (U.C.C. 1–201[20] ).

The *Getty* Court thus dismissed the Complaint against the defendant credit card company on the ground that it was the "holder" of the forged checks as defined by the U.C.C., and therefore, had acted as a "non-

bank depositary" against whom the drawer could not bring an action. For the same reasons, we find that defendant Charles Schwab is a non-bank depositary entitled to the common-law and U.C.C. check-fraud protection.

However, an exception to the general principle that a drawer does not have a cause of action against a depository, but must instead look to the drawee bank for recovery when a fraudulently signed check has been paid, exists where the depositary bank acts with commercial bad faith. *See, e.g., Getty,* 90 N.Y.2d at 330–31, 660 N.Y.S.2d at 694, 683 N.E.2d 311. Keyfood argues that as alleged in the Complaint defendant did act in such a manner, and therefore, may not avail itself of the protection of the U.C.C.'s general rule.

However, the "commercial bad faith" exception only applies where the depositary "acts dishonestly—where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme." *See, e.g., Prudential–Bache,* 73 N.Y.2d at 275, 539 N.Y.S.2d at 706, 536 N.E.2d 1118. The requirement of actual knowledge applies because the drafters of the U.C.C. explicitly did not include a standard of care requirement, imposing instead only an obligation on the parties "to act with 'honesty in fact.'" U.C.C. 1–201[19]:

> Consequently, a [depositary's] lapse of wary vigilance, *disregard of suspicious circumstances* which might have well induced a prudent banker to investigate and other permutations of negligence are not relevant considerations under [the U.C.C.]. *Id.* (emphasis added)

Keyfood does not suggest any actual knowledge of facts or circumstances indicating such intentional bad faith by defendant.[2] On the contrary, Keyfood only alleges that defendant failed to make inquiry where it had such a duty before depositing the checks in light of suspicious circumstances.[3] If true, the allegations at most only demonstrate gross negligence on the part of defendant, not commercial bad faith. *See* Cplt. ¶¶ 9, 12, 19, 22, 27, 30, 33, and 36.

Plaintiffs' final argument that defendant may not escape liability for the claims alleged in the Complaint because it was named as the payee on the second check in the amount of $60,000 does not appear to have any legal basis. As previously discussed, the check-fraud protections available to depositaries exist because where a drawee pays out on a fraudulently signed check it is deemed to have used its own funds, not those of the drawer. The fact that defendant was the payee on one of the checks does not change the fact that the person(s) who deposited the checks obtained money belonging to Chase and not Keyfood. Therefore, Keyfood may not bring an action against Charles Schwab as the payee.

### CONCLUSION

Based on the foregoing, we find that Keyfood can not adequately allege any claims against defendant arising from its deposit of the two fraudulently indorsed checks. Accordingly, the motion to dismiss is granted.

**SO ORDERED.**

---

2. Paragraph 33 of the Complaint states: Defendant Charles Schwab acted in a commercially unreasonable manner and in bad faith in accepting Check Number 103995, in the sum of $60,-000, which check was made directly payable to Charles Schwab, when it opened an account in the name of a third party without first making inquiry with Keyfood when neither the aforesaid party nor Keyfood maintained an existing account with Schwab. Paragraph 36 reiterates this claim with respect to the check in the amount of $253,084.98.

3. As above noted, at oral argument defendant's counsel informed us that an employee did contact Chase Bank before accepting the check for $253,084.98. We then asserted that if in fact an employee had made such a call it would have to have been because the employee suspected the check was unauthorized. In retrospect we recognize that we were incorrect in taking that position. Before accepting a check for such a large amount, anyone might well contact the drawee bank to confirm the account's ability to handle it.